**Sui Juris**

Dan Patrick McCaul

97 Lime Kiln Road

Butte, Montana 59701

Email: danmccaul97@gmail.com

Phone 406-490-8677

**FILED**

**JUN 3 0 2017**

Clerk, U.S. Courts
District Of Montana
Butte Division

*Pro Se Litigant for Plaintiff*

## UNITED STATES FEDERAL DISTRICT COURT, BUTTE MONTANA

## SILVER BOW COUNTY

| | |
|---|---|
| DAN PATRICK MCCAUL, | Cause No. _CV-17-41-Bu-BMM_ |
| *FORMERLY* M&M REPOSSESSION and TRANSPORT, LLC. AMERICAN LENDERS SERVICE CO.   BUTTE, BOZEMAN and HELENA, | Honorable _Brian Morris_ |
| Plaintiff, | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FROM RACKETEERING, CONSPIRACY TO ENGAGE IN A PATTERN OF RACKETEERING ACTIVITY, AND RELATED CLAIMS;** |
| vs. | |
| FIRST MONTANA BANK, Inc.,( a Montana Corporation) individually, Chris DuToit, Joe Kesler, Adam McQuiston , Cathy Ness, Debbie Fisher,   Jana Wallace, Joan Ray, Attorney Greg Black, Attorney Martin S. King and Roes and Does 1 through 10. | **JURY DEMANDED** |
| Defendants, | 18 U.S.C. 1961 *et seq.*;   18 U.S.C. 1964 (Civil RICO Remedies); and, related violations of law. |

SHORT CAPTION: MCCAUL vs. FIRST MONTANA BANK

PLAINTIFFS:

DAN PATRICK MCCAUL, *Pro Se Litigant for Plaintiff*


DEFENDANTS:


FIRST MONTANA BANK, INC.,

its agents, servants and/or employees;

and any other as yet undiscovered parties

or entities, related to this action, that

may come to light in

subsequent discovery.


OTHER PARTIES THAT ARE NEITHER PLAINTIFFS NOR DEFENDANTS:

Plaintiffs complain also on behalf of other directly or proximately injured

parties, which injury or damage arises from Defendants' tortious and

potentially unlawful actions which made necessary certain existing

contractual agreements.

These parties are:

The Federal Government of the U.S.;

The Internal Revenue Service (IRS).

The Federal Deposit Insurance Corporation (FDIC);

The Federal Reserve System (FRS);

Stephanie L. Marshal, of Butte, Montana;

Jacob Hart, of Butte, Montana;

Jennifer Shahood, of Butte, Montana;

Steven Fisher / Water Bug, of Great Falls, Montana;

Gary Gutherie, of Townsend, Montana;

Jennifer Parvinen, of Butte, Montana;

Jeffrey Sciara (at present address is unknown)

Plaintiffs' various financial clients,   personal and business creditors who may have not been paid, and were defrauded through the systematic pattern of racketeering activity alleged herein;

- American Express Gold Card

- American Express Platinum Card

- Discover Card

- Mile High Federal Credit Union

- The Internal Revenue Service

- Montana Dept. of Revenue

- American Lenders Service Co. Odessa Texas- Franchise Company

- American Lenders Service Co. Butte, Bozeman, and Helena Montana

- Southwest Montana Community Federal Credit Union;

- Bank of Butte

- Approximately twenty-seven (27) other creditors, independent labor contractors, and clients that were affected and/ or were defrauded

Others whose funds on deposit and /or proper payment were  unnecessarily wrongfully and/or illegally taken without the Creditors and/or Clients written consent, knowledge, and without written authorization, and were defrauded with exactly the same purpose and motive, of which Plaintiffs complain herein; as well as other unknown injured parties that may yet be discovered.

Parties or persons that may have direct knowledge of these matters directly of Plaintiffs allegations; are former Bank President Chris DuToit; former bank attorney Greg Black; bank attorney Martin S. King. These parties are included in accordance with the provisions of FRCP Rule 71.

## THE COMPLAINT, IT'S ARGUMENTS AND CONTENTS:

I. JURISDICTION (paragraphs 1 - 19)

II. VENUE (paragraphs 11 - 13)

III. STANDING AND PLAINTIFFS' RIGHT TO RELIEF (paragraphs 14 - 17)

IV. BACKGROUND AND FACTS OF THE CASE (paragraphs 18 - 86)

V. LEGAL POSITION AND SUMMARY OF SPECIFICS (paragraphs 87 - 92)

VI. CAUSES OF ACTION (paragraphs 93 - 101)

VII. REGARDING THE RACKETEERING "ENTERPRISE" (paragraph 102 - 102)

. RELIEF SOUGHT (paragraphs 103 - 110)

IX. DEMAND FOR JUDGMENT (paragraph 111 - 111)

. PLAINTIFFS' AVERMENT (paragraphs 112 – 114)

Exhibit "A" *Business Client Trust Account*

Exhibit "B" *November 2, 2012- Tax ID sent to FM*

Exhibit "C" *Damage Impact Report*

Exhibit "D" *Signature Card Trust Account Agreement*

Exhibit "E" *Promissory Notes 7008 / 7007*

Exhibit "F" *MCA 30-1-103 Credit Rating constitutionally protected*

Exhibit "G" *FMB own records labeled as (FMB pages 196,197,198) net worth*

Exhibit "H" - **April 9, 2013 email to Chris DuToit**

Exhibit "I" – **Loan 7008 History Loan Statement**

Exhibit "J" **Plaintiffs Ex. No. 41 –Email Cathy Ness "Bill Pay"**

Exhibit ___ Sec. of State- **American Lenders** identifier no **C145651.**

Exhibit ___ Sec. of State-**M&M Repossession** identifier no.**C145011**

Exhibit **"M"** SOS-**M&M Recovery Service. LLC** identifier no. **A179472**

Exhibit **"N"** Franchiser **ALSCO Odessa TX- "charge off $48.748.00"**

Exhibit **"O"** Attorney **Martin S. Kings Feb.22, 2016 –"No such records exist"**

Exhibit **"P"** Fraudulent letters of Default - Plaintiff Ex. **7-8-9.**

Exhibit **"Q"** Letter to **Martin King –Dyslexia**

Exhibit **"R"** Attorney **Greg Black –December 10, 2015 –letter to McCaul**

## I. JURISDICTION:

Plaintiffs aver on information and belief, and upon reasonable investigation and research that multiple Federal RICO laws 18 USC 1961-1968 have been violated and in fact crimes have been perpetrated against Plaintiff and Plaintiffs former businesses, and further that the District Federal Court of The State of Montana has jurisdiction in this matter:

I.    Federal District court has jurisdiction by statute under

a. 18 USC 1964(a) - Civil Remedies

b. 28 USC 1331-The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

c. 28 USC 1339-The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service.

d. 18 U.S.C 641 –Public money, property of records.

e. 18 U.S.C 644 -Banker receiving unauthorized deposit of public monies.

f.  18 U.S.C 644 – Custodians failing to deposit money, persons affected.

g.  18 U.S.C. 650- Depositaries failing to safeguard deposits.

h. 18 U.S.C. 1344 – Bank Fraud

i.  18 U.S.C. Chapter 31- 656 Embezzlement and Theft

j.  18.S.C. 653 Disbursing Officer misusing public funds.

k.  18 U.S.C. 651 Disbursing Officer falsely certifying full payment.

l.  18 U.S. Code § 1005 - Bank entries, reports and transactions

m.  MISAPPLICATION OF FUNDS   Title 18 U.S.C.

n.  18.S.C. 1343 Wire Fraud

o. 18 U.S.C. Chapter 63 Mail Fraud and other fraud offenses.

p. 18 U.S.C. 1346 Honest Services

It appears that the actions of Defendants, First Montana Bank in these matters also violated a score of state laws and regulations, which, of necessity, should become public and made known for the publics best interest, its welfare, and the safety and soundness of all First Montana Bank customers.

U.S.C 1983 claims, "[i]t is well established that a "jury may award punitive damages . . .. either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." "*Morgan v. Woessner, 997 F.2d 1244,1255 (9th Cir.1993)*

Regarding degree of reprehensibility and punitive damages generally describe the proper purpose of punitive damages so that the jury understands that punitive damages are not to compensate the plaintiff, but to punish the defendants and deter the defendant and others from such conduct in the future. (See *Phillip Morris USA v. Williams 549 U.S. 346-353-54 (2007), BMW of N. Am., Inc. v. Gors, 517U.S. 559(1996), Pac. Mut Life. Ins. Co. v. Haslip 449- U.S. 1 (1991) see Morgan v. Woessner, 997 F.2d 1244,1255 (9th Cir.1993)*

8. MCA 27-1-221 Punitive Damages -- Liability -- Proof -- Award

(1)(2) (a) (b) (3) (a) (b)

Research of applicable law produces a comparable case of bank malfeasance, **Kelly Logging vs. First Interstate Bank**, which seems to establish the law for liability as well as for punitive damages.

The law is very clear in **Kelly Logging** vs. **First Interstate Bank** and appears to be the standard for Punitive damages -- liability – proof - award.

(1) Subject to the provisions of MCA 27-1-220 and this section, reasonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice.

(2) A defendant is guilty of actual malice if the

Defendant has knowledge of facts or intentionally disregards facts that create high probability of injury to the plaintiff and:

(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or

(b)    deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

## FRAUDULENT CONCEALMENT

Plaintiffs have filed this complaint within the time limits on Specific Kinds of Actions pursuant to Federal Law (18 U.S.C. 3282) is five (5) years and (18 U.S.C. 3282) is *except* for mail and wire fraud schemes that *affects a financial institution,* which case the statue is ten (10) years after the date on which the offense was committed (18 U.S.C. 3293), in (958. Fraud Affecting a Financial Institution)

(citing cases); of United States v. Garfinkel, 29 F3d 1253, 1259 (8th Cir. 1994) (mail fraud scheme may continue after mailing). The scheme may extend back beyond the limitation period does not preclude prosecution of an offense committed in furtherance of the scheme within the period.

Generally, there is a 5 year default statute of limitations for federal criminal matters, except in 18. U.S.C 3282, many federal crimes have a longer period and other bank- related crimes  18 U.S.C. (656) (657) (1005) (1006) (1007) (1033) and

(1344)  as Plaintiff alleges each violation occurred for which the statute of limitations on each is that of 10 years.


In a significant U.S. Supreme Court case in 2000 held in ***Rotella v. Wood*** that the four (4) –year statute of limitation period begins as soon as a plaintiff discovers his injury, regardless of when the fraud causing that injury is discovered. Prior to Rotella, some appellate courts and district court had held that the RICO statute of limitations did not commence to run until the plaintiff discovered both and injury and a pattern of RICO activity.  Hence, *Rotella* requires a plaintiff to move with more diligence in asserting RICO claims.


At issue here is fourfold.

1.  The RICO Predicate Acts all took place during the past ten (10) calendar years.

2.  Plaintiff alleges "Theft" and "Theft by Embezzlement"  occurred  **and NOT**  "Right of Setoff" by its Bank, Bank and this action is commenced within (5) and (8) years from contract and  from the date of discovered acts first made known to Plaintiffs on February 22, 2016 because of "fraudulent  concealment"  of Plaintiffs Records  by  Defendants. Defendants are still in possession of funds illegally taken from Plaintiff

and refused upon demand to return the property, monies, and funds illegally taken.

3. Plaintiff alleges that Defendants have no defense whatsoever to claim that funds illegal taken were within the banks "Right of Setoff" because neither M&M Repossession loans 7007 nor 7008 were ever in default on any date in which FMB, Inc., instructed its employees to take funds from Company (A) American Lenders Accounts to pay Company (B) M&M Loan payments. Therefore a promissory note out of the deposit is not applicable and the 3 year statute of limitation should not apply. And should be within the five years and or 10 years statute after (BATE STAMP FMB00077 was receipted to Banking Commission on April 6, 2017.

4. On December 10, 2015 after Dan McCaul alleged and screamed "Theft" "Theft by Embezzlement" Actual Fraud, Actual Malice and Bank Fraud, FMB, Inc. *"Forgave"* and *"Cancelled"* the $ 211,260.70 loans that M&M **owed** to FMB, Inc.  For these reasons the prescribed time limits on the statute should begin on the date of December 10, 2015 the date in which Dan McCaul received the "Promissory Notes" from attorney Greg Black marking the "Notes" as being "Paid"    However, to this date,

Plaintiff nor plaintiffs creditors, clients, contract workers cannot be fully aware of their injury because of the Pattern of RICO activity caused by Defendants and the Defendants fraudulent concealment of records.

### Parties

1.) M&M Repossession and Transport, LLC, and American Lenders Service Co. Butte, Bozeman and Helena ("M&M-ALSCO-McCaul") was a Limited Liability Company organized in Montana, and was dually - Authorized and qualified to do business in the State of Montana from 1989 up until it forced closure in 2015.    M&M-McCaul was engaged in the collateral repossession, private investigation and debt collection businesses, with its principal place of business in Butte, Montana.    The thirty (30) year old company employed between 13 and 17 subcontractor laborers, and during busy times may subcontracted upwards of 20 to 23 people who all had vocation on the survival of M&M Repossession and American Lenders Service Co. LLC, that is until McCaul businesses (*American Lenders/M&M Repossession*) were forced closed by First Montana Bank (FMB) on December 30, 2015.

Dan McCaul businesses were nationally recognized, and were awarded the Honor of being the *"Nations Top 100 Repossession and Investigative Service Companies in the United States".*

Article published in the Montana Standard on June 10, 2012 titled– *"Butte's Bill Collector"* *"Repo man Returns $46 Million Dollars to Rightful Owners"* had deemed McCaul's business as *"one of the least known, most successful businesses in Montana"*

2.) In 1992 M&M Repossession and Transport, LLC –Dan McCaul began its *Independent Contractor* relationship with First National Bank k/n/a/ First Montana Bank.     The parties enjoyed a long lasting professional business working relationship spanning more than two decades.     M&M-ALSCO-McCaul provided the bank with services of collateral repossession, debt collection, and bank consulting and investigative services associated with risk management.

3.) First Montana Bank, Inc. (FMB) is a banking corporation organized, incorporated, and authorized to do business under the laws of the State of Montana. FMB operates its banking charter under the State of Montana.

COMES NOW, Plaintiff, Dan Patrick McCaul *formerly* M&M Repossession and Transport LLC, American Lenders Service Co., requesting trial by jury, for its Complaint against the Defendants, First Montana Bank, Inc. alleges and shows to the Court as follows:

4.) On September 1, 2011 Dan Patrick McCaul was a *multi-millionaire* whose combined personal and business **net worth** exceeded **$ 2.3 Million Dollars.**

**See (Exhibit G)**

**BUT FOR**: the reprehensible and *outrageous* actions of FMB, Inc. its *former* Bank President Chris DuToit, and the banks multiple employees Cathy Ness, Jana Wallace, Debbie Fisher and Joan Ray who knowingly and willingly participated in perpetrating more than thirty-five (35) highly questionable, and potentially unlawful financial transactions and crimes, resulted in the bank causing *catastrophic damages* to Plaintiff.

**Today** because of the Defendants unsavory / *illegal actions* Dan McCaul is **broke, penniless, a pauper** on the verge of bankruptcy and Dan McCaul lost his 30 year old family owned and operated business.

The Crux of McCaul's complaint is that:

5.) Because of the FMB *former* President-Chris DuToit and VP-   Adam McQuiston personal *"hatred"* towards Dan McCaul, and DuToit vindictive acts of retaliation against McCaul businesses, and other bank employee's reckless misconducts, Dan McCaul, American Lenders and M&M Repossession suffered permanent irreversible financial damages and damages.

Here is exactly what transpired and caused Plaintiff damages:

1. Chris DuToit falsely and fraudulently represented to bank employees, senior management and *federal* and *state banking examiners* that M&M Repossession and Transport, LLC loans were in default, *when in truth,* they were not.

2. Banks employees had either relied upon   DuToit representations to be truthful, and / or knew that his representations that M&M loans were in default were mendacity and knowingly and willingly participated in DuToit scheme to injury Dan McCaul.

3. Each and every individual bank employee *failed* to review the 7007 and 7008 loan files to insure that the legally required **"Notice of Default"** was mailed to the *Legal Loans Borrowers* (**M&M**) and the *Legal Loan Guarantors* (**Dan/Cheri McCaul**) *prior* to each bank employee performing these highly questionable / *illegal* thirty-five (35) financial transactions.

4. There can be no ambiguity by these actions, that each and every bank employee *had failed* to review M&M Repossessions 7007 and 7008 "Promissory Notes" and failed to review American Lenders Service Co. Account 8265 Signature Card that otherwise would have clearly alerted the banks employees that Company (A) (*American Lenders*) is a separate business entity from that of Company (B) (M&M) and American Lenders was not obligated to make loan payments for M&M.

5. What is (now known)and is fact, in that each bank employee who had relied upon Chris DuToit false and fraudulent representations to be truthful, had failed to follow written the banks written policy and procedures pertaining to "Set-Off"

Plaintiff alleges ignorance is no defense, that each and every bank employee (DuToit included) all had access to competent Legal Counsel and failed to seek the advice of Counsel prior to performing these thirty-five (35) illegal financial transactions. For these reasons such can only be construed that such actions, are and were intentional, malicious, and premeditated by design to injure Plaintiffs.

## MANNER and MEANS

6.) Plaintiff McCaul alleges, Defendant DuToit manner and means of scheme to injure Plaintiffs by false and fraudulent representations that Plaintiffs loans were in default, were vindictive acts that stemmed from these multiple occasions:

They are:

1.    A boating accident that the McCaul family was involved in *many years prior* to DuToit becoming the banks new president that had caused as Chris DuToit alleged personal and business losses when DuToit owned and operated his insurance business, *DuToit Financial Services.*

2.  Bank levies, wage garnishments and court proceeding that M&M

Repossession /American Lenders had executed against DuToit

direct relatives, DuToit (**sister**) and (**brother-in-law**) while

DuToit was the banks president.

3.  Dan McCaul exposing DuToit other schemes to defraud other

bank business clients and bank customers to DuToit superiors,

Bank CEO Joe Kesler and VP Adam McQuiston.

4.  What is (*now known*) and is now fact, is

that, Chris DuToit was personally in financial trouble, in debt

exceeding $ 801,000.00 and that DuToit had schemed and

defrauded multiple business clients and customers of FMB for his

own personal financial gains to pay off his own debt.

5.  What is (know) and evidence will prove that when Plaintiff

McCaul called and emailed DuToit superiors, CEO Joe Kesler and

VP – Adam McQuiston warning to "watch" and "investigate"

DuToit, McCaul warnings to the banks  CEO fell upon deaf ears

and blind eyes, the    "Board of Directors" did nothing and never

responded once to Dan McCaul   demands   to   investigate   their

own   bank   president,   until,   the   bank   terminated   Chris   DuToit –

after the damages was already done.


## SCHEME TO DEFRAUD


It was part of the scheme <u>that</u>:


7.) Beginning   on   or   about   January   30,   2013   former   Bank   President   Chris

DuToit *made false and fraudulent misrepresentations* to   his subordinate

bank employees, under DuToit direction and authority.


These   false   and   fraudulent   misrepresentations   made   by   DuToit-

remained un-retracted and uncorrected and had enjoined bank employees

into   participating   in   DuToit   scheme   to   injure   Dan   McCaul   and   McCaul

businesses,   American   Lenders / M&M   Repossession   and   Transports,   and

into   believing   that   M&M   Repossession   and   Transports,   LLC   loans   were   in

default, *when in truth,* they were not.

8.) What is (*now known*) by the *limited bank records* Dan McCaul was able to obtain after 3 years of begging and after to the *bank had restricted* and *blocked* all McCaul internet access, preventing McCaul to      view, access or ability to print his own banking records, is that, FMB employees perpetrated (at least) thirty-five (35) felony criminal acts      of theft, and theft by embezzlement by stealing (at least) $ 58,412.17 from Company (A) American Lenders multiple Account and then applying the unauthorized / illegal transactions funds to loans of Company (B) (M&M) that were not due, owing, in default and whose loans had not yet matured.

Here are the facts:

***Fact No. 1***      Beginning on January 30, 2013 continuing through September 1, 2015 FMB employees illegally took the sums of **$ 58,412.17** form Company American Lenders Service Co. PLLC, *federally insured/federally protected* ***"Trust"*** and ***"Payroll"*** accounts to make (alleged) defaulted loan payments for Company (B) M&M Repossession and Transport, LLC.

**Fact No. 2**          What is *known* is that, during that 17 month period FMB employees stole on average stole the sum of $ 3,436.01   *each month* from Company (A) American Lenders business clients, financial creditors and contract labor workers to make loan payments for Company (B) M&M loans that were not in default.

**Fact No. 3**          What is *known* is that, during that 17 month period FMB employees stole on average stole the sum of **$ 3,436.01** *each month* from Company (A) American Lenders

**Fact No. 4**          What is *known* is that, FMB employees defrauded the financial creditors, business clients and contractor labor worker of Company (A) American Lenders whose **$ 3,436.01 (each month)** was held in "Trust" and "Payroll" Accounts on deposit, whose monies were illegally taken then applied to Company (B) M&M Repossession loan payments.

**Fact No. 5**          What is *known* is that, Company (A) American Lenders (Dan/Cheri McCaul) never knew, never authorized, never signed any written authorization transaction receipt authorizing FMB employees to **$ 3,436.01 (each month)** to pay Company (B) M&M Repossession loan payments.

***Fact No. 6***        What is *known* is that, FMB employees failed on thirty-five (35) separate and continuous occasions to obtain written permission from American Lenders /Dan /Cheri McCaul authorizing FMB, Inc. to take funds held on deposit from American Lenders in the sum of **$ 3,436.01 (each month)** to pay Company (B) M&M Repossession loan payments.

***Fact No. 7***        What is *known* is that, FMB employees failed on thirty-five (35) separate and continuous occasions to mail signed authorization receipts /charge vouchers that proves, that American Lenders /Dan /Cheri McCaul had authorized or (even knew) that FMB, Inc. took funds held on deposit from American Lenders –Creditor-Clients-Contract Worker- "Trust" and "Payroll" Account in the sum of **$ 3,436.01 (each month)** to pay Company (B) M&M Repossession loan payments.

***Fact No. 8***        What is *known* is that, FMB employees had neither reason nor right on thirty-five (35) separate and continuous occasions to took funds held on deposit from American Lenders –and American Lenders Creditor-Clients-Contract Worker- "Trust" and "Payroll" Account in the sum of **$ 3,436.01 (each month)** to pay Company (B) M&M Repossession loan payments that were not in default, due, owing and not matured.

Upon the courts initial read through of this complaint and evidence of Exhibits, is should become clear the multiple reasons why First Montana Bank concealed, spoiled and even destroyed Plaintiffs financial "Business Client Trust Agreement" document and all of the Plaintiff Financial Transaction Records.

The reasons FMB concealed Plaintiffs transaction records are simple:

a)      The *banks own records prove* that First Montana Bank employees **did not** have reason nor right to perform Legal bank *"Set-Offs"* for defaulted loan payments, *because* neither loan 7007 nor loan 7008 was ever in default on or prior to any of the thirty-five (35) dates in which FMB employees illegally took funds to make loan payments.

*INSTEAD*, the *banks own records prove* that First Montana Bank employees perpetrated (what is known) potentially thirty-five (35) felony criminal acts of out and out, Theft, and Theft by Embezzlement.

a.  The *banks own records prove* that FMB employees were illegally making unauthorized withdrawals from Company (A) to make Company (B)  monthly loan payments  by stealing monies from American Lenders, *therefore,* neither loan 7007 nor loan 7008 could

have ever been in default, justifying the banks claim of Legal "Set-Offs" *because* bank employees were illegally making the monthly loan payments.

b. Here are the reasons why American Lenders /Dan /Cheri McCaul <u>had never received any prior</u> "notice of default" that would have granted and afforded the Legal Loan Borrowers (M&M) and Legal Guarantors (Dan/Cheri McCaul) the Legally Required fifteen (15) day "Right to Cure" prior to bank employees (DuToit included) taking funds on deposit is as follows:

9.) FMB *knew* these loans were not in default and bank employees knew their actions were not those of Legal "Set-Offs".

10.)   FMB employees *knew* or should have known that these financial transactions were "Illegal" and were acts of Theft and Embezzlement from American Lenders Account.

11.)    FMB employees *knew* or should have known that American Lenders was not the Legal Loan Borrowers obligated to make loan payment for M&M Repossession.

12.)    FMB employees *knew* or should have known that DuToit representation were false and fraudulent because there was not one single "Notice of Default" contained within either loan file 7007 or 7008 that **"IF"** the bank employees would have reviewed loans files, bank employees would have known DuToit statements were false and did not warrant or justify any legal "setoff".

13.)    BUT FOR, all bank employees (DuToit included) *knew* these financial transactions were acts of theft, and theft by     embezzled, therefore, never sent the required thirty- five (35) written Notice of Defaults and never sent any transaction receipts records to M&M / McCaul to hide their crimes.

14.)    Here are the thirty-five (35) separate and continuous dates in which the (known) predicate acts had been perpetrated by defendant's employees Chris DuToit, Cathy Ness, Jana Wallace, Debbie Fisher, and Joan Ray and to the best of Plaintiffs knowledge all transactions were done from 1940 Dewey Blvd. in Butte Montana.

| | On this Date | FMB Employees | stole this amount | From Account Number | Caused damages to Plaintiff (others) |
|---|---|---|---|---|---|
| 1 | January 31-2013 | DuToit/ Ness | $ 1,500.00 $ 150.00 | 4653 8265 | |
| 2 | March 29-2013 | Ray/ DuToit | $ 980.87 | 8265 | |
| 3 | April 1 – 2013 | DuToit/ Ness | $ 2,400.00 | 8265 | |
| 4 | April 8 – 2013 | DuToit /Ness | $ 2,400.00 | 8265 | |
| 5 | April 29 -2013 | DuToit / Ness | $ 2,400.00 | 8265 | |
| 6 | June 3 – 2013 | DuToit / Ness | $ 2,400.00 | 8265 | |
| 7 | June 3 – 2013 | DuToit / Ness | $ 2,400.00 | 8265 | |
| 8 | June 3 – 2013 | DuToit / Ness | $ 2,400.00 | 8265 | |
| 9 | July 8 -2013 | (Unknown) | $ 650.00 | 8265 | |
| 10 | September 11- 2013 | DuToit /FMB | $ 4,530.00 | 8265 | Lender Liability |
| 11 | September 11 -2013 | DuToit/FMB | $ 3,850.00 | 8265 | Lender Liability |
| 12 | September 30 – 2013 | DuToit / Ness | $ 548.16 | 8265 | |
| 13 | September 30-2013 | DuToit / Ness | $ 371.39 | 8265 | |
| 14 | September 30 -2013 | DuToit / Ness | $ 2,400.00 | 8265 | |
| 15 | October 30 – 2013 | DuToit/Fisher | $ 2,400.00 | 8265 | |
| 16 | October 30 - 2013 | DuToit / Ray | $ 4,800.00 | 8265 | |
| 17 | October 30 – 2013 | DuToit / Ray | $ 548.61 | 8265 | |
| 18 | December 23 -2013 | DuToit / Ray | $ 125.00 | 8265 | |
| 19 | December 23 -2013 | DuToit / Ray | $ 548.61 | 8265 | |
| 20 | December 23 -2013 | DuToit / Ray | $ 2,400.00 | 8265 | "Mothball" |
| 21 | January 8 -2014 | DuToit / Fisher | $ 2,500.00 | 8265 | |
| 22 | January 8 – 2014 | DuToit /Fisher | $ 2,400.00 | 8265 | |
| 23 | January 29-2014 | DuToit / Fisher | $ 650.00 | 8265 to 4653 | Unauthorized |
| 24 | March 24 -2014 | DuToit / Ness | $ 418.00 | 8265 | |
| 25 | April 1 – 2014 | DuToit / Ness | $ 423.81 | 8265 | |
| 26 | May 9 – 2014 | DuToit / Ness | $ 497.03 | 8265 | |
| 27 | May 9 -2014 | DuToit / Ness | $ 523.00 | 8265 | |
| 28 | May 10 -2014 | DuToit / Fisher | $ 3,286.90 | 8265 | Lender Liability |
| 29 | May 10 -2014 | DuToit / Fisher | $16,000.00 | 8265 | Breach/Waterbug |
| 30 | July 2 -2014 | DuToit / Ness | $ 497.06 | 8265 | |
| 31 | July 2 – 2014 | DuToit / Ness | $ 449.00 | 8265 | |
| 32 | July 14 – 2014 | DuToit / Fisher | $ 13.00 | 8265 | |
| 33 | July 17 -2014 | DuToit / Fisher | $ 40.00 | 8265 | |
| 34 | July 31 -2014 | DuToit / Fisher | $ 95.64 | 8265 | |
| 35 | August 11- 2014 | DuToit / Ness | $ 513.64 | 8265 | |
| | | **TOTAL** | **$58,412.17** | **TOTAL DAMAGES** | **$14,196.079.33** |

**Source:**    First Montana Bank, Inc. <u>own</u> banking records.


As a result of Defendants actions Plaintiffs have been damaged.

15.)     Plaintiff alleges that FMB, Inc. and attorney Martin S. King will
         attempt to dupe this court and others, into believing that these thirty-five
         (35) (now known) transaction were the bank's legal "Right of Set-Offs"
         when *in truth*, they are not.

16.)     Plaintiff alleges Defendant destroyed Plaintiff records to conceal their
         thirty-five (35) criminal acts that bank employees perpetrated based upon the
         thirty-five (35) false and fraudulent representation that DuToit had made
         bank employees, the Banks own Board of Directors, as well as Federal and
         State Banking examiner that remained     *un-retracted, uncorrected*, and
         *undiscovered* for more than 1047 days, until Dan McCaul screamed *"Theft"*
         the bank finally **terminated DuToit** on or about December 10, 2015.

17.)     At issue here, is that, DuToit *knew* his power and authority as the
         banks president would not be questioned by bank staff. DuToit directed bank
         employees to perpetrate and carry out Thirty-five (35) separate and
         continuous, highly questionable and potentially illegal financial transactions,
         by instructing employees Ness, Wallace, Fisher, and Ray to take funds on
         deposit, from Company (A) *American Lenders Service Co. PLLC* federally
         protected / federally insured "**Trust**" and "**Payroll**" Accounts to pay

monthly loan payments for Company (B) ***M&M Repossession and Transport, LLC***, whose loans were not yet due, were not owing, were not in default and whose loans had not yet matured.

18.)     Defendants ***knew*** or should have known that Company (A) *American Lenders* <u>was not</u> legally obligated to make monthly loan payments for Company (B) *M&M Repossession and Transports, LLC*, as M&M Repossession was the only Legal Loan Borrowers, not American Lenders Service Company PLLC.

19.)     There can be no ambiguity that the Defendants actions were not by accident, for which, thirty-five (35) transactions had been perpetrated from American Lenders Accounts to pay the monthly loan payments owed by M&M Repossession.

Simply put, Plaintiffs allege that Defendants (DuToit included) failed on thirty-five (35) separate and continuous occasions to:

1. DuToit *failed* to *retract* and *correct* his *false* and *fraudulent misrepresentation* made to American Lenders –Dan/Cheri McCaul, employees Cathy Ness, Jana Wallace, Debbie Fisher, Joan Ray, CEO Joe Kesler, and VP Adam McQuiston –Federal and State Banking Examiners and other Roes and Does who are not known to Plaintiff at this time however, will become known in Discovery.

2. Defendants (DuToit included) failed to review the loan(s) file(s) on thirty-five (35) separate and continuous occasions to verify that prior to each date in which bank employees performed these predicate acts, that a written "Notice of Default" was contained within the file dated prior to the occurrence and that the Loan Borrowers/Guarantors were given their legal fifteen (15) day "Right to Cure" prior to setoff.

3. All Defendant (including the "Board of Directors")  failed on thirty-five (35) separate and continuous occurrences to **protect** and **safeguard** American Lenders Service Co. funds held in deposit and for directing bank employees to perform FALSE and FRAUDULENT "Set-Offs" for loans that were not in default,

due, owing, or were not matured.

20.)     Plaintiff *relied* upon its *bank to provide honest services*.

Plaintiff alleges that FMB failed to inform American Lenders Service

Co. PLLC that its monies held in deposit accounts would be used for any

other purpose that what American Lenders specified.

21.)     Plaintiffs allege that all Defendants knew, should have known that

these separate and continuous transactions from Company (A)

"Trust"   and   "Payroll"   Account   over   a   17   month   period,

would create   high probability of injury to plaintiff's financial creditor,

business clients and contract labor workers who also relied upon First

Montana Bank to provide honest services.

22.)     FMB, Inc. knew that their former bank president's action these actions

were illegal, yet, FMB, Inc. remained "silent" and attempted to cover-up

these illegal acts by concealing and spoiling the financial transaction records

from Plaintiff, preventing Plaintiff from retaining Legal Counsel and

obtaining Justice.

23.)   FMB, Inc. *knew* these transactions were illegal and either:

a) destroyed the financial transaction records to cover up their employees crimes.

b) FMB, Inc. fraudulently concealed the records by having the banks former Attorney Greg Black send McCaul a letter via *US Mail* telling Plaintiff that his request for own banking records were **"moot"**.

c) FMB, Inc. had bank attorney Martin S. King send McCaul a letter via *US Mail* on February 22, 2016 telling McCaul that negotiable instrument and voucher/transaction records **"do not exist"**

24.)   When Dan McCaul alleged "***Theft***, and "***Theft by Embezzlement***"

Here is what transpired:

a) Dan McCaul disputed the debts; McCaul disputed the accuracy of the loan balances on loans 7007 / 7008.

b) The disputed loan balances by McCaul were based upon the representations DuToit made to McCaul by claiming that the $ 27,979.00 the <u>bank owed</u> to M&M/American Lenders had been applied to loan payments, yet DuToit failed to provide Plaintiffs

receipt that showed the monies FMB owed to McCaul had actually been applied to the loan payments as was represented occurred.

c) McCaul demanded that FMB produce American Lenders –M&M Repossession financial records.

d) Once McCaul demanded the bank to produce American Lender and M&M financial records, FMB *blocked* and *restricted* <u>all</u> *internet access* preventing McCaul from viewing and printing his own records.

e) THEN,   FMB, Inc. ***forgave*** and ***cancelled the debts*** M&M Repossession <u>**owed**</u> to First Montana Bank in the sums totaling **$ 211,260.70**.

f) THEN FMB, Inc*.* ***terminated*** Chris DuToit

g) FMB, Inc. ***refused*** to provide Plaintiff copies of Plaintiffs own financial records on more than six (6) separate dates beginning in or about October 2013 through April 2017.

h) FMB, Inc. *refused* to reimburse plaintiffs the sums (known) in that amount of $ 58,412.17 upon Plaintiffs written and verbal demands.

i) To this day, and only after McCaul filed written complaint with the state's Banking Commission, Dan McCaul was provided only one (1) financial voucher that clearly shows DuToit and Ray on March 29, 2013 had illegally taken $ 980.87 from Company (A) "Trust Account" to pay Company (B) 7008 loan payment, that was not due, was not owing, was not in default and whose loan was not yet matured.

j) When Plaintiff McCaul failed to accept FMB, Inc. *hush money* by accepting the forgiveness payoff of $ 211,260.70 to remain "Silent" and "Keep Quite" and just go away, McCaul was threatened by bank attorney Martin S. King as follows:

1. McCaul was *threatened* by attorney King *via telephone* to never go into his own bank again or McCaul would be sued.

2. McCaul was threatened *via telephone* by attorney King to not have contact with any employee or former employee or McCaul would be sued.

3. McCaul a Licensed Private Investigator (no. 10430) was threatened *via telephone* to not investigate, write, or have contact with other third parties or McCaul would be sued.

4. Once DuToit had been terminated by the bank, former bank employee, (***now the banks current president***) called Dan McCaul and **"WARNED"** McCaul to be careful of the banks vindictive, And retaliatory acts.

k) In affidavit transcribed by (former licensed private investigator no. 10430) Dan McCaul in phone conversation with FMB's President Ryan Nielsen on December 23, 2015 @ 10:18 AM- Mr. Nielsen shared first hand his own horrific personal experiences of FMB retaliations and FMB's cynical attempts to sabotage Mr. Nielsen career and credibility by which, FMB employees and bank officers called Mr. Nielsen employer (American Federal/Opportunity Bank) threatening to sue Mr. Nielsen for allegedly "Stealing" bank customers away from FMB upon Mr. Nielsen departure.

l)  In that phone conversation, Nielsen *"warned"* McCaul to **be careful**, to **be *fearful*** of FMB retaliations.  Nielsen **warned** McCaul thatFMB and other(s) party(s) will **spy** on McCaul, will attempt to **discredit, intimidate, extort, bribe**, and cause harm and injury to McCaul and his family should McCaul pursue claims.

m)  In affidavit transcribed by McCaul that took place between McCaul and Nielsen, Mr. Nielsen shared with Dan McCaul other information that pertained to Rocky MTN RV in which Mr. Nielsen spouse was employed and shared firsthand knowledge with Ryan that Chris DuToit had taken a gas powered generator from a camp trailer that had been repossessed by FMB, Inc. and sold that collateral to Rocky MTN RV for the sum of $ 700.00 causing a financial loss to the banks customer, his employer and FDIC and Federal Reserve.

n)     In a *face to face* meeting between Ryan Nielsen, Dan

McCaul at the Pour House Pub (exact date unknown) only days *prior*

to Ryan Nielsen accepting his new position as First Montana Bank

President and (after his departure from American Federal /

Opportunity Bank) and after the ***termination*** of Chris DuToit.

Mr. Nielsen shared other concerns of DuToit's illegal *criminal acts*

and *patterns of racketeering* and **encouraged McCaul** to contact

other bank customer and business owners and **investigate** this matters

for which Nielsen claimed, DuToit had also defrauded other bank

customers for his own personal financial gain.


Those customers were.


1. Rocky Mountain RV

2. Butte GM Auto Center

3. Quarry Brewing

4. D&D RV Sales in Helena Montana




In that face to face meeting at Pour House, Mr. Nielsen agreed to

testify to McCaul credibility, prompt and timely payments by McCaul always paying his loan ahead of schedule and paying off loan prior to their maturity date.    Nielsen stated "DuToit did a lot of damage to a lot of people, you included that is why I left that bank, was because of DuToit – I will testify how you were damaged by DuToit"

In a written text message Nielson sent to McCaul's cell phone on December 24, 2015 @ 9:08 AM – the message reveals further concerns, and gives rise that DuToit had induced other bank customers, commercial business customers /owners to work in concert and connection to participate in DuToit schemes for his own personal financial gain.

Here, there can be no ambiguity that the **banks current President** Ryan Nielsen **_believes_** that Chris DuToit engaged in Patterns of Racketeering with other bank customers /business owners and there is a paper trail that proves so.

It reads as follows:  (emphasis added)

*"Wouldn't surprise me on the* ███████████ *him and* ███████████ *were good friends I bet if they dig into that they will find a paper trail."*

**Fact is**:    Dan McCaul did find a paper trail.

**Fact is**:    **other parties** *supra,* as well as potential other banks customers all suffered losses both directly and indirectly as did FMB Inc.   FMB suffered losses exceeding more than    $ 13,000.00   because of insider dealings between DuToit and other businesses, all worked in concert to make profits off the backs of unsuspecting FMB customers, and then worked in concert and connection to cover-up conceal DuToit and others questionable acts and acts of willful negligence.

**Fact is**: ██████████ owner ██████████████, (others- McCaul has specific names), and even a former FMB employee – **did spy** on Dan McCaul.  McCaul has evidence that such occurred within the Montana Club and other places.  To this day, it continues.


24.) **INSTEAD** of McCaul seeking out restraining or protection orders that had been recommended by Ryan Nielsen for which he recommend that McCaul

obtain for himself, spouse Cheri and sons' Coleton and Connor because of his own retaliation that Ryan Nielsen had suffered by his employer FMB.

Plaintiff McCaul heeded advice of Federal and State prosecutors *to allow* (FMB, Inc. and other Multiple Parties) to *spy*, *investigate and make inquiries* against Dan McCaul and McCaul's family, done in order, that should the Defendants attempt to bring forth any derogatory evidence or materials against Plaintiff McCaul or his family, these self-serving-cynical attempts would clearly identify individual and *parties* associated by their own conspiracy and collusion to harm Plaintiffs, further proving each person's participation in "patterns of racketeering"  and to this day, it continues.

As a direct result of Defendants action, Dan McCaul had been personally sued and is being sued by his former financial creditor, business clients and former labor workers who all want to be paid their monies that First Montana Bank had illegally had taken.

McCaul has had automobiles repossessed and seized by his former creditors / business clients attempting to recoup their monies that were illegally taken by FMB.

25.)    As a result of Defendant unsavory and illegal actions, threats of intimidation, extortion, and spying on McCaul by the banks attorneys, and other parties.

1. Plaintiff Dan McCaul suffers from

   a) Extreme anxiety / Depression

   b) Weight loss

   c) Hypertension / High Blood Pressure

   d) Insomnia

   e) Paranoia / Fear

2. Plaintiff spouse Cheri McCaul suffers from

   a) Extreme anxiety

   b) Depression

   c) Chronic Headaches

   d) Insomnia

   e) Paranoia / Fear

## FACTUAL BACKGROUND

## HISTORY BETWEEN PARTIES

### HERE ARE THE FACTS:

25.)      M&M Repossession and Transport LLC, and American Lenders Service Co. PLLC,  was an *"Independent Contractor"* that provided collateral repossession, debt collection, private investigation, and bank consulting services to First National Bank a/k/a First Montana Bank, Inc. spanning more than two decades.

Plaintiff Dan McCaul is now a ***"Whistleblower"***  against McCaul former business company's employer First Montana Bank, Inc.

27.)   First Montana Bank was the primary banking institution for Dan and Cheri McCaul and McCaul's two (2) businesses, American Lenders and M&M Repossession.

28.)   Beginning on November 18, 2005 and over a period of three (3) year American Lenders Service Co. LLC opened a series of four **(4) commercial business checking accounts** with First National Bank of Montana, now known as First Montana Bank, Inc., the last account opened was on May 8, 2008.

29.)   Neither Dan nor Cheri McCaul had any personal checking accounts; all Accounts were commercial business checking accounts.

30.)   Dan McCaul received his personal profits by and through M&M Repossession / American Lenders multiple business accounts. All clients and creditors were paid monies payable to each of them after reconciliation of Gross Profits minus expenses equaled Dan McCaul net profits.

The accounts established were:

American Lenders Service Co PLLC. Account no. 102178265 Business Checking Account was the businesses **"Business Client Trust Account"** opened on **November 18, 2005**.

**See (Exhibit-A)**

M&M Recovery LLC. Account no. 10292675 Business Checking Account was the businesses **"Operations Account"**  opened on **June 6, 2006.**

American Lenders Service Co PLLC. Account no. 102234645 Business Checking Account was the businesses "Storage **Account"**  opened on **May 8, 2008.**

American Lenders Service Co PLLC. Account no. 102234653 Business Checking Account was the businesses "Payroll **Account"**  opened on **May 8, 2008.**

Plaintiffs signed the account agreement(s) on each of the above dates.

See (**Exhibit No. (B)**- Letter to 1st Montana Bank /W-9 November 2, 2012-Tax ID – American Lenders /M&M are different)

31.)   The first business account opened was the ***Business Client Trust Account*** on November 18, 2005.  This account had established the course of dealings, course of business, course of performance and method of payment for business clients and financial creditors some **six (6) years <u>prior</u>** to M&M

Repossession and Transport- entering into two (2) unrelated loan contracts with First Montana Bank.

**See (Exhibit No. (D)**    *Signature Card Trust Account Agreement*

**See (Exhibit No. (A)**    *Business Client Trust Agreement*

32.) In early August of 2011, American Lenders Service Co.

underwent a massive surge of growth and was in need of working capital for expansion to meet the many needs and demands of its client's requests for various services.

33.) Prior to providing working capital funding to M&M

Repossession, FMB first required Dan McCaul have a business evaluation be completed to determine the significant net worth of McCaul- American Lenders Service Co. franchise offices in Butte, Bozeman and Helena as part of FMB requirements for granting loan consideration for M&M Repossessions business "*Operating Line of Credit*".

34.) Upon its completion, the business evaluation submitted to

FMB denoted that the American Lenders Service Co. Butte, Bozeman and Helena franchise offices had a combined *__net worth__* of **$ 980,000.00**.

35.)The personal assets of Dan McCaul had also been verified by

Bank President Ryan Nielsen, the personal financial statement of Dan

McCaul reflected that McCaul personal **net worth** exceeded **$ 1,370.000.00**.


36.) On or about September 13, 2011 -FMB's own banking officer,

and the banks current President Ryan Nielsen completed his due diligence

and had in fact verified McCaul's personal and business assets and the

combined **net worth** of **$ 2,370.000.00 Million Dollars** was in fact accurate,

true and correct.          **See (Exhibit G)**


37.)Mr. Nielsen had also verified Dan and Cheri McCaul

impeccable credit report /credit ratings to be that of 700 and 684, respectfully.


38.)Upon the departure of Ryan Nielsen from the FMB accepting a

new position elsewhere, McCaul was introduced to DuToit as being the new

acting bank President. In that initial meeting McCaul was advised that

DuToit would be handling the banking and lending needs for McCaul,

DuToit quickly reminded McCaul of the loss his family boating accident

cost him and his former business, and within two months of DuToit

becoming the new bank President –McCaul businesses served the wage

garnishment and bank levies upon DuToit (sister) and (brother-in-law, and DuToit retaliation against M&M-ALSCO-McCaul began.

In fact, Plaintiff Dan McCaul alleges that DuToit breached confidentiality and privacy policy provisions of the bank.  McCaul alleges that DuToit passed on highly confidential personal, legal, and financial information to the opposing party in which McCaul Company was engaged in dispute

39.)In the fall of 2011, on September 28, 2011, some six (6) years **after** American Lenders Service Co had opened its *Business Trust Account.* M&M Repossession entered into two (2) unrelated commercial loan contracts with First Montana Bank, Inc.,

40.)Loan no. 7008 was incepted as **business equipment loan** – M&M Repossession and Transport LLC, was the (*Legal Loan Borrowers*) and Dan and Cheri McCaul were the (*loan guarantors*).

41.)Loan no. 700 was incepted as the businesses "***Operating Line of Credit***" loan – again M&M Repossession and Transport LLC, was the (*Legal Loan Borrowers*) and Dan and Cheri McCaul were the (loan guarantors).

42.)Plaintiffs signed both promissory notes on September 28, 2011 for the two (2) unrelated loans.

**See (Exhibit (E)** *Promissory Notes 7008 / 7007*

43.) Two (2) months after the inception of the two (2) unrelated loans, Dan McCaul had applied $30,000.00 in payments towards the principal and interest reduction of loan no. 7008. This advanced the next payment due date 13.5 months. The next scheduled due date was October 2013.

**See (Exhibit (I)** Loan 7008 History Loan Statement

44.)There is no ambiguity by this critical exhibit. This exhibit clearly and convincingly proves that Dan McCaul requested loan's 7007 and 7008 at FMB and McCaul's St. James Community Hospital to be set up on "*Bill Pay*" and each loan payment be drafted from Account 8265 on the **12th day** of each month.

In other words, M&M Repossession and Transport, LLC loan payments should never have had been even one (1) day past due and American Lenders Service Co. "Trust" and "Payroll" Account would have never been perpetrated. (This is a Fact)

**BUT FOR**:   Ms. Ness failing to insure the Plaintiffs 7007 and 7008 loan payments were drafted via "Bill Pay" as McCaul email clearly denotes that such occur,   Plaintiff Dan McCaul suffered permanent irreversible damages to Plaintiffs *constitutionally protected* Credit Report /Credit Rating and American Lenders Creditors –Clients-Contract Labor Workers were Defrauded. (This is a Fact)

**See (Exhibit (J)** Plaintiffs Ex. No. 41 – Email to Cathy Ness "Bill Pay"

45.) What is (now known) that because of the Defendants thirty-five(35)

intentional failures to send M&M Repossession and Transport  LLC,  (35)

"Notice of Default" in order to conceal their criminal acts and not grant and

afford  Company (A)    American  Lenders  and  Company  (B)  M&M

Repossession and the loans Guarantors their "Legal Right" pursuant to the

terms and conditions contained within "Promissory Notes" their "Right to

Cure" and / or "Right to Dispute" the debts, amounts and any validity

associated with FMB, Inc.  claims that such loans were in default,  caused

Plaintiff damages to Dan McCaul and spouses *"Constitutionally Protected*

*Credit Rating"*  (this is a Fact)


Plaintiff alleges that because of the wanton and deliberate acts of all

Defendants (DuToit included) because of their individual participation by

conspiracy and colluding in keep from, conceal, spoil and not send M&M

Repossession / Dan/Cheri McCaul is contrary to  the Legally Required (35)

"Notice of Default Letters"  should have received as is contained in the

Legal Terms and Conditions in the "Promissory Notes" executed by both

parties is not applicable to M&M –McCaul, however, is to all other bank

customers.

Defendants failed to notify Plaintiff that McCaul request for "Bill Pay" on the 12th day of each month as McCaul requested would be taken on any other day in which Plaintiff specified.

FMB, Inc. failed to notify Plaintiff that financial transaction would be executed without the knowledge, consent and written authorization of the Accounts Owners (American Lenders) and without the knowledge, consent or written authorization of the Accounts Signers- (Dan/Cheri McCaul)

What was not known to Plaintiffs, and could not have been discovered until on or about April 8, 2013, when McCaul was turned over to collection by St. James Community Hospital who had only received one "Bill Pay" in which Dan McCaul executed would not, and was not discovered until several months of Dan McCaul relying on his bank to facilitate, execute and make certain the "Bill Pay" was set up as was requested by McCaul, because McCaul did not trust his new banker DuToit" a statement made known to CEO Joe Kesler and VP_McQuiston.

46.)Plaintiff alleges that the "Business Client Trust Agreement" governed the reasons for the "Bill Pay" by that, the specific date of the 12th of each month, afforded McCaul the opportunity to reconcile payments owed and payable to creditors, clients, and contract labor worker in accordance with 45 day net pay to creditor pursuant to the Client Trust Account Agreement.

47.)What is known, is that, these thirty-five (35) *outrageous predicate acts* perpetrated by the banks employees *caused catastrophic damages* to Plaintiffs businesses, its financial creditors, independent contract laborers and it multiple business clients, by which, all of whom, had vocation on the survival of American Lenders /M&M Repossession, the McCaul's family owned and operated businesses.

48.) On each of the dates below, First Montana Bank had neither reason nor right to take funds that were *held in trust*, that were on deposit from *Company (A)* (*American Lenders Service Co*) federally insured /federally protect *"Trust"* and *"Payroll"* Accounts to make monthly loan payments for *Company (B)* (*M&M Repossession and Transports, LLC*), as Company (A) was not the Legal Loans Borrowers.

## PLAINTIFF'S MOTION FOR

## REQUEST FOR COUNSEL

49.) Plaintiff in accordance with provision of FCRP Rule 83.6 (b)

Request for Counsel motions this honorable court that counsel be appointed on *PRO SE* motion for appointment of counsel, for merits of Plaintiffs inability to pay, and for the nature and complexity of the civil RICO action, and for factual and legal matters including the need for factual investigation and expert witnesses;

REQUEST FOR COUNSEL IS OF NECESSITY FOR PLAINTIFF CLAIMS.

For these reasons, *supra*, Plaintiffs motion for Request of Counsel should be granted, based upon the inability of attorneys being able to view physical objective evidence (bank records) that would allow legal counsel to evaluate Plaintiff McCaul claims and damages.

(1) The likelihood of conflicting testimony calling for a lawyer's presentation of evidence and cross-examination;

(2) The party's inability to prepare and present the case *pro se*;

(3) The extent to which the interests of justice will be served by appointment of counsel, including the benefit the court may derive from counsel's assistance;

(4) The extent to which counsel might be appointed for *full representation* rather than a limited purpose;

(5) The party's inability to date to obtain legal counsel by other means, to which, the Defendants *fraudulent document /record concealments* has prevented Plaintiffs from obtaining legal counsel because of lack of physical objective evidence to support Plaintiffs multiple allegations.

(6) The Plaintiff, Dan McCaul suffers from dyslexia. Although McCaul is highly functioning, McCaul lifelong struggles were only made known to bank attorney Martin S. King out of necessity- after Mr. King repeated mockeries of attempting to humiliate Dan McCaul handicap by claiming King could not understand McCaul writings and pleadings.


See (**Exhibit Q**) Letter to Martin King- Dyslexia


(7) Plaintiff knows and acknowledge his limitations and brings this matter to the courts immediate attention and reason why McCaul Request for

Counsel be granted, Dyslexia is Embarrassing to say the least, what often takes most people only minutes to read and comprehend simple paragraphs take McCaul hours.

50.) Plaintiff has attempted to retain the following legal counsels and had been denied representation on a contingent basis *because of the lack of records* Plaintiffs was given by First Montana Bank.

Plaintiff is in need of all financial transaction records, receipts, debit /credit/charge and loan payment vouchers tickets and copies of loan files in order that justice maybe served.

The repeated refusal and fraudulent concealment of records by the Defendants is preventing McCaul from obtaining justice. The attorneys McCaul has attempted to retain are as follows:

a) Paoli Law Firm-Missoula MT

b) Robert Patterson- Washington DC

c) Reader Law Firm- Bozeman MT

d) Philip Chiavello –Livingston MT

e) Avalon Law- Big Sky MT

f) Timothy Dick – Butte, MT

***BUT FOR*** the damages Plaintiffs and Plaintiffs former businesses have suffered and continue to suffer as a result of Defendants actions Dan Patrick McCaul does not have the financial ability or means to pay for legal counsel on an hourly rate.

McCaul motions this honorable court to have counsel appointed to represent McCaul in these complex RICO claims. McCaul recommends this court to view the **Damage Impact Report** prepared by Michael Francis Gribben, in support of McCaul claims, and contact FBI Agent Jonathon Trunagal in the Bozeman Montana office of the FBI, by which, McCaul has filed felony criminal complaints against Defendants in pursuant of claims.

McCaul motions this court to compel First Montana Bank, Inc. to produce all financial records, supra, via court order of subpoena.

Attached is Plaintiffs Motion to Compel Production of Documents.

Attached is Plaintiffs Motion for Special Masters.

Attached is Plaintiffs Motion for Request for Appointment of Counsel.

## CIVIL RICO

The primary cause of this action is a widespread criminal enterprise engaged in a pattern of racketeering activities within the state of Montana, and a conspiracy to engage in racketeering activities involving numerous RICO predicate acts during the past ten (10) calendar years.

Each and every allegation set forth in this Complaint is incorporated in this Count by reference.

1.   The circumstances that have occasioned this initial complaint surround First Montana Banks *former* President Chris DuToit *false and fraudulent representations* made to subordinate staff employees, the banks own senior management, its board of directors, as well as federal and state banking examiners and auditors that M&M Repossession and Transports, LLC two (2) commercial business loans were in default, *when in truth*, neither loan 7007 nor 7008 were not in default on any date _in which the former bank president induced  or enjoined bank employees to perpetrate these high questionable / illegal predicate acts.

2.    At issue here is that these *separate* and *continuous* false and fraudulent misrepresentations made by the banks *now former* president remained un-retracted, uncorrected, and manifested, and were relied upon bank the bank employees, senior management, and federal and state banking examiners to be truthful, honest and accurate, *when in truth*, all statements made by the banks former president were mendacity.

3.    For these reasons, Chris DuToit fraudulent representation *induced* and *coerced* bank officers and employees Operation Manager Cathy Ness, Administrative Assistant Jana Wallace, Bank Officer Debbie Fisher and employee Joan Ray to perpetrate thirty-five (35) highly questionable (*illegal*) financial transactions.

4.    Defendants *failed* to inform Plaintiffs that their deposit accounts would be used in any other manner than what the Plaintiffs instructed.

5.    Defendants *failed* to inform Plaintiffs that Company (A) American Lenders federally insured/federally protected "Trust" and "Payroll" Account would be used to pay Company (B) M&M Repossession loan payments.

6. Defendants *failed* to inform Plaintiff that FMB, Inc. **would not** prepare, retain written records and / or copies of financial records for each and every financial transaction.

7. Defendants *failed* to inform Plaintiff that FMB, Inc. **would not** require written consent and signed written authorization transaction receipts of each and every financial transaction –withdrawal, transfer, loan payments.

8. These *separate* and *continuous* predicate acts resulted in multiple financial creditors, business clients and independent labor contractors and even the Tax Authorities of the United States Government, the (IRS) being defrauded, and resulted in McCaul 30 year old family business being forced to close its business forever.

51.)What is unknown to Plaintiffs is this, how much more monies potentially did FMB, Inc. employees illegally steal from the Plaintiffs Accounts?

**BUT FOR:** FMB, Inc. *repeated refusal* and *fraudulent concealment* provide Plaintiff copies of his own records Plaintiff may never know.

Here is exactly what happened as a direct result of Defendant's unwarranted reckless and reprehensible actions.

## COUNT ONE

## ACTUAL FRAUD, CONSTRUCTIVE FRAUD, BANK FRAUD, COLLUSION, CONSPIRACY

52.)FMB perpetrated (*what is known*) is thirty-five (35) felony

criminal predicate acts against American Lenders Service Companies

financial creditor, business clients and contract laborers and the Tax

Authorities of the U.S. Government (the IRS)

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT TWO

## WRONGFUL INTERFERENCES

53.)FMB committed (35) known *tortious interferences* against American Lenders Service Companies financial creditor, business clients and contract laborers and Dan McCaul.

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT THREE

## BAD FAITH

## BREACH OF COVENANT OF GOOD FAITH FAIR DEALINGS

54.)FMB *breached the covenant of good faith and fair dealings on thirty-five (35) separate and continuous occasions.*

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT FOUR

## BREACH OF CONTRACT

55.) FMB *breached the contract provisions contained within the promissory notes on thirty-five (35) separate and continuous occasions.*

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT FIVE

## BREACH OF CHECKING ACCOUNT CONTRACT

56.) FMB *breached the provisions contained within the signature account card agreements on thirty-five (35) separate and continuous occasions.*

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT SIX

## LENDER LIABILITY CONTROLS

57.) FMB *exercised extreme lender liability control over Plaintiffs commercial business checking account on thirty-five (35) separate and continuous occasions.*

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT SEVEN

## FAILURE TO PROVIDE HONEST SERVICES

## ILLEGAL FEES

58.)FMB *caused* American Lenders to incur *illegal* loans.

As a result of Defendants actions Plaintiffs have been damaged.

59.)FMB *caused* American Lenders to incur *illegal* NSF fees.

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT EIGHT

## THEFT AND THEFT BY EMBEZZLEMNT

60.)FMB *defrauded* and *stole* funds belonging to American Lenders business clients resulting in directly loss to each client.

61.)FMB *defrauded* and *stole* funds belonging to American Lenders financial creditors resulting in directly loss to each creditor

62.)FMB *defrauded* and *stole* funds belonging to American Lenders independent labor contractors resulting in directly loss to each contractor.

63.)FMB *caused* Plaintiff McCaul and American Lenders to be forced to borrower money/ liquidate personal and business assets to pay back clients and creditors monies that were wrongfully / illegally taken *because of* bank employees intentional acts to harm McCaul.

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT NINE

## FAILURE TO SAFEGUARD FUNDS ON DEPOSIT

64.)FMB *caused* American Lenders multiple Checking Accounts to become Negative.

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT TEN

### FALSE ENTRY TO BANKS BOOKS AND JOURNAL

65.) FMB *caused* M&M Repossession Loans 7007/7008 to become Past Due.

   As a result of Defendants actions Plaintiffs have been damaged.


## COUNT ELEVEN

### DISHONORING CHECKS AND ELECTRONIC PAYMENTS

66.) FMB wrongful transactions *caused* FMB own bank employees too knowingly and purposely *"Dishonor American Lenders Checks"* and dishonor and return Electronic Funds Transfers (*EFT*) *because* FMB caused accounts to go negative and M&M Repossession to become past due.

67.) FMB *caused* M&M Repossession / American Lenders to be forced to *"Mothball"* portions of business operation in December 2013 and December 2014 for more than six months at a time.

## COUNT TWELVE

## FRAUDULENT CONCEALMENT OF DOCUMENTS,

## FINANCIAL TRANSACTION RECORDS and RECEIPTS

68.) FMB *refused* to provide plaintiff copies of financial records, receipts, loan payment records.

69.) FMB *refused* to reimburse Plaintiffs funds upon demand.

As a result of Defendants actions Plaintiffs have been damaged.

## COUNT THIRTEEN

## EXTORTION AND ATTEMPTED BRIBERY

70.) FMB *forgave* and *cancelled* the debts totaling the sum of

$ 211,260.70 that (M&M) owed to First Montana Bank in attempts to keep Dan McCaul "Silent" and keep McCaul from exposing the truth.

As a result of Defendants actions Plaintiffs have been damaged.

71.)FMB wrongful actions *caused* Plaintiffs Dan McCaul, M&M

Repossession and Transport and American Lenders to be sued by multiple

financial creditor and business clients who want their monies back that were

illegally taken by bank employees.

As a result of Defendants actions Plaintiffs have been damaged.

### COUNT FOURTEEN

### FAILURE TO SAFEGUARD MONIES ON DEPOSIT

### MISAPLLICATION OF PUBLIC FUNDS

72.)FMB self-serving and fraudulent representations made to

Banking Commission and FBI that "the Bank" cannot locate the "Business Client

Trust Agreement" that was incepted in 2005 is mendacity. **Fact is**: Dan McCaul

and FBI have a copy of the "Original" Trust Account Agreement that was provided

to FMB Account Rep.  Rosemary Anzik when the "Business Trust Agreement

"was incepted in November 2005.  Plaintiff *alleges* that **"IF"** FMB after twelve

(12) years American Lenders Service Co. Account 8265 *was not* and *is not* a valid

"Trust Account" that FMB has in fact perpetrated hundreds of thousands of illegal

financial transactions by allowing Company (B) M&M Repossession & Transport,

LLC and Company (C) M&M Recovery Service, LLC (*all of whom are separate*

*business entities apart from American Lenders Service Co*.)  to illegally deposit, comingle funds, and then FMB allowed hundreds of thousands of withdrawal from American Lenders Accounts without the expressed written consent, knowledge of the Accounts Owners Company (A) and the Accounts Signers Dan/Cheri McCaul.

As a result of Defendants actions Plaintiffs have been damaged.

The questions presented to this court are:

> 1) By **what authority** did FMB employees have to a separate business entity's funds, Company (A) American Lenders monies, to pay Company (B) M&M Repossession loan payments?

> 2)  Did FMB have right to take monies belonging to the financial creditors, business clients and independent labor contractors of Company (A) American Lenders federally insured / federally protected ***"Trust"*** and ***"Payroll"*** Accounts to pay the debts exclusively owed by Company (B) M&M Repossession without first sending any prior legally required ***"Notice of Default"*** granting the *Legal Loans Borrowers* (M&M) and the *Legal Loans*

*Guarantors* (Dan/Cheri McCaul) their stipulated (15) day legal *"Right to Cure"* any past due or default amount owning as is required by black letter law and contained within the banks own promissory notes?

3) Did FMB employees have a right to perform these thirty-five (35) (known transactions) without the bank employees preparing proper debit/credit/charge vouchers or receipt records?

4) Did FMB employees have a legal right to take funds on deposit from Company (A) American Lenders without first obtaining signed paperwork for the Accounts Owners authorizing these transactions?

5) Did FMB employees and / or FMB, Inc., have legal right to destroy, conceal and spoil Plaintiffs financial transaction records and keep these records from Plaintiffs view, keeping Plaintiffs from obtaining justice by destroying physical objective evidence?

6) Did FMB, Inc. have Legal Right to *refuse* to provide Plaintiff and Company (A) American Lenders copies of all of plaintiffs own banking transaction records?

7) Did FMB, Inc. have Legal Right to *refuse upon demand* by Company (A) the return of, and reimbursement of the $ 58,417.17 that bank employees had wrongfully /illegally taken?

8) Were these acts that were perpetrated by FMB employees *foreseeable* to cause harm to Plaintiffs and the Plaintiffs businesses, that left Plaintiff without working capital and without ability to re-pay Plaintiffs business creditors, financial clients and independent labor contractors their monies that FMB had wrongfully / illegally had taken?

9) Did FMB not keep other financial transactions records , debit, credit, payment record vouchers and receipts for every other bank customer for the past four (4) years, or just Dan McCaul and American Lenders?

Well known case law have established the *"Right to Set-Off"* John

Wills, Inc. v. Citizen Nat"l Bank of Netcong, 125 N.J.L 546 ( E.

&A. 1940)


To Establish a "Right *to Set-Off"*, three conditions must be satisfied:


1. **The funds to be set off must be the property of the debtor.**

   (American Lenders funds were not the property of the legal loans borrowers M&M
   Repossession / nor was American Lenders the debtors. M&M Repossession and
   Transport was the only debtors obligated to pay these debts, and was the only Legal
   Loan Borrower)


2. **The fund must be deposited without restrictions.**


   (Both the American Lenders *Trust* and *Payroll* accounts had restrictions- both have
   Tax Consequences and are exempt from garnishment and / or "set-off". The facts
   are and the truth is, **all** self-employed business accounts have tax consequences in
   one form or another)

### 3. And the existing indebtedness must be due and owing.

(Neither loans were due and owing- FMB  never provided any written  notice of default  to M&M allowing the borrowers the 15 day right to cure –prior – to bank employees illegally taking monies  and FMB employees were making loan payment illegally therefore loans were never in default, nor were the past due, were not owing and had not yet matured) Black's Law Dictionary defines "Due" as a debt that has matured.  M&M loans had not yet matured, loans were not due and were not yet owing.)

Citing 5A Michie, Banks and Banking s 115 a, at 306.

### 4. In addition, there must be a mutuality of obligation between the debtor and his creditor, as well as between the debt and the funds on deposit.

(Neither  American Lenders –Dan or Cheri McCaul nor First Montana Bank had ever agreed that is would be ok for bank employees to steal monies from Company (A) commercial business accounts whose monies belonged to deposit creditors and not Company (B) M&M. Company (A) American Lenders had no legal binding contract that obligated (A)to make loan payments for (B),  nor did (A) have any written, verbal contract with FMB that allowed FMB employees authorization to take monies for loan payments that were not due, owing, in default and had not yet matured)

## CIVIL RICO

This is a complex civil action for RICO remedies authorized by the federal statutes at _ _.C. 196i *et seq.*; for declaratory and injunctive relief; for actual, consequential and exemplary damages; and for all other relief which this honorable Superior Court deems just and proper under all circumstances which have occasioned this Initial COMPLAINT.  See 18 U.S.C. §§ ⸱⸱⸱ (a) and (c) ("Civil RICO").

**Fact is**:   There is clear evidence that **"warned"** the banks president

DuToit and all employees *"under no circumstances do not*

*take funds out of this account, these are clients funds and*

*I will be out of Trust as I am now."*

See **(Exhibit (H)** April 9, 2013 email to Chris DuToit

There can be absolutely no ambiguity by this evidence McCaul placed in the hands of FMB, Inc., and its President that clearly shows the banks knowledge and notice, information and belief and intentional disregard Plaintiffs written demands to DuToit to **"Stop"**

**Fact is:**        These wrongful and very highly questionable transactions *were* *not* Victimless Crimes, and as Plaintiff alleges, these actions are criminal in nature.


In fact, it is just the opposite, Theft, Theft by Embezzlement and Bank Fraud on all levels, are not victimless at all.  The multiple predicate acts perpetrated by one party, has a crippling and adverse effects on other unsuspecting parties that may not know the full extent of their damages until years after the acts perpetrated are discovered, as in the present case.   The continuous fraudulent concealments of the Plaintiffs banking and transaction records by the bank is further preventing American Lenders creditors, clients and contract labor worker from determining the full extent of his/her own damages as well.


73.)These illegal and abuse threats of litigation against Plaintiffs were orchestrated to discourage Plaintiff from investigating, communicating with Plaintiff own financial institution and involve patterns of racketeering activity alleged herein, e.g. mail fraud, wire fraud, theft, theft by embezzlement and bank fraud.

See 18 U.S.C. SS 1341 and 1344, respectively.

The primary objective of the racketeering enterprises has been to inflict severe and sustain economic hardship upon Plaintiff, with the intent of impairing, obstructing, preventing and discouraging Plaintiff from writing, publishing, investigating, and conducting judicial activism as a qualified Private Investigator and as the (creditor) owner and account signer of accounts by which plaintiff alleges criminal actions were perpetrated by bank employees.

The primary cause of these civil actions also involves criminal acts that were perpetrated against the Plaintiffs and are related to the civil claim:

***BUT FOR***    FMB, Inc. senior management authorizing its employees to conduct such outrageous and reprehensible illegal financial transaction against  American Lenders, M&M Repossession and Dan McCaul such resulted in American Lenders / Dan McCaul damages (exceeding more) than **$ 14,196,079. 33**    and caused direct damages to McCaul multiple creditors and clients in excess of  **$ 338,552.06**.

See **Exhibit C**- Damage Impact Report

A violation of either 18 U.S.C. § 1005 or § 1006 is usually involved when there is a violation of 18 U.S.C. § 656 or § 657 since a false entry typically is necessary to *cover up* such violation.

18 U.S.C. § 1006 also makes it an offense to participate in anyway, with intent to defraud, in a **transaction or loan of an institution** referred to in this section. The individuals to whom 18 U.S.C. §§ 1005 and 1006 apply will be discussed in the following applicability sections.     See 18 U.S.C 1964 (c) provides:

*"It shall be unlawful for any person employed     by    or     associated with     any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."*

74.) First Montana does business in the State of Montana.

75.)Based on the preceding, the allegations contained herein constitute a matter which affects Interstate Commerce, and

presents a condition of "complete diversity of citizenship"; the matter, therefore, falls within Federal Jurisdiction, and specifically again under Title 18 USC and RICO.

76.) All the preceding leaves the pursuit of justice possible only within the jurisdiction of the Federal District Court of Montana.

77.) There is relevant Federal law regarding patterns of racketeering activity, RICO, and specifically also with regard to both mail and wire fraud, 18 U.S.C 1341 and 18 U.S.C 1343 respectively, as well as extortion, (Dobb Frank Act) (Sarbanes- Oxley) a/k/a *Corporate and Auditing Accountability Responsibility and Transparency Act.*

Therefore, The (Dobb-Frank) (Hobbs) (Sarbanes-Oxley Act) doctrine are relevant, and the matters herein should be considered only within the bounds of Federal Law and this action is commenced within the time prescribed by the applicable statute of limitations concerning the "fraudulent concealment" of documents, records and financial transaction vouchers/receipts by defendants.

Plaintiff had requested Documents and Records on these dates;

1) April 2013- bank *refused* and denied Plaintiffs request.

2) August 2015- bank *refused* and denied Plaintiffs request.

3) October 2015- bank *refused* and denied Plaintiffs request.

4) November 2015- bank *refused* and denied Plaintiffs request.

5) December 2015- bank *refused* telling McCaul his requests for documents were **"moot"** because bank forgave $211,260.70 in debts.

6) January 2016- bank *refused* and denied Plaintiffs request.

7) February 2016- bank *refused* and denied Plaintiffs request by having Martin S. King send letter telling McCaul his records **"do not exist"**.

8) January 2017 – McCaul filed felony criminal complaint with BSB Police Dept.

9) January 2017 – McCaul filed felony criminal complaint with FBI

10) April 2017 – McCaul filed complaint with Banking Commission.

11) April 2017 – McCaul **receives only one (1) transaction record** for the past four (4) years.

## FRAUDULENT CONCEALMENT

Under federal common law, a statute of limitation may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that:

> (1) the defendants wrongfully concealed material facts relating to defendants wrongdoing:
>
> **Fact is**:   Defendants spoiled, concealed, blocked, restricted Plaintiffs internet access to plaintiffs own records *because* of FMB, Inc., and employees wrongdoing.
>
> **Fact is**:  Defendants attorney Greg Black told Dan McCaul in written letter sent via *US Mail* that McCaul dispute of debt, and request for copies and financial transaction records was **"Moot"** since the bank *forgave* and *cancelled* two debts totaling the sums of **$ 211, 670.70** that M&M Repossession had owed to the bank, because of FMB, Inc. and employees wrongdoings.

**Fact is**:  Defendants attorney Martin S. King told Dan McCaul in written letter sent via *US MAIL* that McCaul demands for copies of negotiable instrument and voucher records *"do not exist"* when in truth, they do and because of FMB. Inc. and employees wrongdoings.

(2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitation period on several transactions: and

**Fact is**:  Defendants asked Dan McCaul to leave "the Bank" and advised McCaul that all Account(s) and Loan(s) information were **restricted** from McCaul obtaining his own records and financial transaction receipts.

(3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiffs seeks to have tolled.

**Fact is**:  Defendants and defendant's attorney Martin S. King threaten to sue Dan McCaul "IF" McCaul had any conversation

with any current and/or former bank employee. Defendants threaten to sue McCaul as a Licensed Private Investigator License No. (10430) from seeking his own records and documents.

**Fact is**: Plaintiff filed written complaint with Banking and Finance Commission, and on April 6, 2017- Plaintiff received one (1) transaction voucher BATE STAMPED FMB000077 dated March 29, 2013 – in which this record clearly and convincingly proves all Plaintiffs claims of Theft, Theft by Embezzlement and Bank Fraud.

9) The sums are applicable to treble damages of three (3) times the amount of damages.

10) The sum exceeds the Federal Statutory limit of $ 75,000.00.

II. VENUE:

The District Federal Court of Montana is the only appropriate venue in this matter:

11) Plaintiff resides, and has resided in Silver Bow County,

Montana for longer than fifty-two (52) years.

12) First Montana Bank, Inc. does business in the State

of Montana.

13) Any change of venue to a different district, for

whatever reason, would cause such further financial economic

hardship, further emotional harm and injury to plaintiff in the

pursuit in obtaining justice.

III. STANDING AND PLAINTIFFS' RIGHT TO RELIEF:

The Plaintiff has standing in this matter, and in the District Federal

Court of Montana:

14) Plaintiff had a four (4) written and signed Checking Account

Agreement/Contracts and two (2) Promissory Notes with First

Montana Bank.

The accounts established were:

American Lenders Service Co PLLC. Account no. 102178265 Business Checking Account was the businesses "Trust **Account**" opened on **November 18, 2005**.

American Lenders Service Co PLLC. Account no. 10292675 Business Checking Account was the businesses "**Operations Account**" M&M Recovery LLC   opened on **June 6, 2006.**

American Lenders Service Co PLLC. Account no. 102234645 Business Checking Account was the businesses "Storage **Account**" opened on **May 8, 2008.**

American Lenders Service Co PLLC. Account no. 102234653 Business Checking Account was the businesses "Payroll **Account**" opened on **May 8, 2008.**

Plaintiffs signed the account agreement(s) on each date.

See (**Exhibit No. 62**- Letter to 1st Montana Bank /W-9 November 2, 2012- Tax ID

– American Lenders /M&M are different)

15) Plaintiffs had a two (2) unrelated written and signed Commercial
Promissory Loan Agreements with First Montana Bank

Loan no. 7008 was incepted as **business equipment loan** – M&M
Repossession and Transport LLC, was the (*Legal Loan Borrowers*)
and Dan and Cheri McCaul were the (*loan guarantors*).

Loan no. 7007 was incepted as the businesses "***Operating Line of
Credit***" loan – M&M Repossession and Transport LLC, was the
(*Legal Loan Borrowers*) and Dan and Cheri McCaul were the (loan
guarantors).

Plaintiffs signed both promissory notes on September 28, 2011 for the
two (2) unrelated loans. **See Exhibit No. (?)** *Promissory Notes
7008 / 7007*

16) This is a matter which devolves upon the interference by

Defendants, in legitimate interstate commerce through its

Genuine pattern of racketeering activities and includes

*"Lender Liability Control"* exercised over Plaintiffs by illegal threats.

17) Plaintiffs have been "stonewalled" by Defendants actions in

*repeatedly refusing*, denying, spoiling Plaintiff from obtaining

his own financial transaction and receipt records.

Plaintiff had continuously request copies of credit /debit /loan

Payment records and receipts since April 11, 2013, and for no

ascertainable reasons, but Defendants –self-serving attempt to

cover up and conceal their former bank presidents and other

employee's wrongdoings and potentially criminal acts, First

Montana Bank refuses to provide Plaintiff his own banking records

In matters of performance

Defendants have continued to stonewall, without legitimate reason, in
every aspect of Plaintiffs good faith attempts to obtain his own
production of copies of his own financial records:

78.) ***First Montana Bank repeatedly refusing*** and failing to provide Plaintiff complete disclosure of pertinent documents in their possession as demanded, by providing only approximately 30% of what was available;

79.) ***First Montana Bank repeatedly refusing*** and repeatedly avoiding to admit any wrong doing whatsoever is reprehensible.

80.) ***First Montana Bank repeatedly refusing*** and denying that   records and vouchers exist, even to this day, even after FMB attorney Martin King provide one (1) single record to the banking commission after telling McCaul and state and federal law enforcement (FBI) in written letter that no such records,  vouchers, existed. The bank still refuses to provide Dan McCaul his own financial records.

81.) ***First Montana Bank repeatedly refusing*** to reimburse funds monies, profits taken from Plaintiffs upon plaintiffs demand, to this day, FMB is still in possession of those funds, and such *has prevented* Plaintiff from retaining and **hiring proper legal counsel** in order to defend these claims

82.) FMB knows that if it keeps refusing to reimburse funds, such will for Dan McCaul to have to defend these matters PRO SE and the fact is, the bank has succeeded, McCaul is now forced to defend these claims as a PRO SE Litigant.

Under Defendants' *separate and continuing deceit*, abuse of process and such malicious persecution, Plaintiffs wither and have been left no choice but to seek justice within Federal Jurisdiction, on grounds of Defendants' *racketeering activities*.

Plaintiff has motioned this honorable court to incept and employee a *"Special Masters" pursuant to Rule 53,* and forensic accountant to review the digitally imaged Computer Records and Scanned Transaction Image Records of First Montana Banks computer backup hard drives and to make available those findings to this honorable court, to Plaintiff  McCaul, the FBI, FDIC, Federal Reserve Bank, BSB Police Dept. for each parties independent review, investigation and determination if in fact First Montana Bank worked in concert and connection with attorney's Greg Black and Martin S. King by obstructing justice during the course of an ongoing official Local and Federal investigation.

## IV. BACKGROUND AND FACTS OF THE CASE

83.) Plaintiffs together held in good faith and fair dealings two (2) commercial loan contracts 7007 and 7008, with First Montana Bank, Inc., of Montana.

84.) Defendants *failed* to inform Plaintiff that their monies held within the federally insured/ federal protected trust accounts and payroll, would be used in any other manner than what the Plaintiff specified.

85.) Defendants *failed* to inform Plaintiff that American Lenders Service Co. Trust and Payroll account deposits would be debited at any time, without reason, without cause, to make M&M Repossession and Transport loan payment(s)

Beginning January 31, 2013, Plaintiff sustained financial injury as a result of a Defendants outrageous misconduct and to this day Plaintiff continues to suffer injury. And without fault of Plaintiffs.

On this date *and every other date* from January 31, 2013

to September 30, 2015 Defendants failed to seek competent

legal counsel review of loan 7008 /7007 to make certain Defendants

had legally mailed to the borrowers and  guarantors the required 15 day

written "Notice of Default" granting the borrowers /guarantors the

afforded opportunity to cure the (alleged defaulted debt) ***prior*** to the

bank employees wrongfully /illegally taking monies from one business

entities account to Pay the financial obligations of another business

entity that had no legal obligation to do so.


Defendants failed to provide Plaintiff *"Honest Services"* pursuant to 18 U.S.C.
1346 Honest Services


86.) Initially Plaintiffs had believed that bank employees had only targeted

and perpetrated only one (1) particular Checking Account and those

Defendants had only committed twenty-three (23) known <u>felony</u>

<u>crimes</u>, *when in truth*, New **Evidence discovered on April 6, 2017**

now reveals that Defendants perpetrated thirty four (34) potential felony

criminal acts (*plaintiffs allege more*),and had in fact infiltrated four (4)

multiple checking accounts, and ***then concealed*** these illegal transactions by disguising this criminal acts as *"**Miscellaneous Debits**"*

**Then** Defendants **destroyed all records** and **receipts** that could otherwise link and expose each Defendant to his/her potential criminal acts, or <u>did the bank and the banks attorney lie?</u>

Plaintiff McCaul <u>directs the courts attention</u> to **Exhibit "O"** –this critical exhibit denotes the cynical, self-serving attempts by   FMB, Inc. and bank attorney Martin S. King ***colluding, conspiring*** in concert to fraudulently conceal plaintiff records from plaintiff's view.

This **New Evidence** was placed into Dan McCaul hands from the state's own Banking and Finance Commission Bureau Chief Wayne Johnston on <u>April 6, 2017</u>, McCaul turned this new evidence over to FBI Agent Jonathon Trunagal on May 6, 2017, and Plaintiff ***alleges*** that FMB, Inc. and attorney King lied to a Federal Agent during the course of an official investigation.

**Source**:    Here FMB own record (**Bate Stamp FMB000077**) provided by
the Banking Commission on April 6, 2017 to Dan McCaul- clearly reveals
that bank employees Joan Ray and Chris DuToit ***participated in a scheme
to defraud American Lenders*** –M&M Repossession- Dan McCaul and its
financial creditors and business clients, and its own employer, as
neither loan no. 7007 nor 7008 were in default on the 28th of March
2013, to warrant these highly questionable transactions

Here is what the banks own records show and are fact:

1) There was not enough money in the account to draft $ 980.87; the banks
   own records clearly show that there was on $ 902.46.

2) This "*charge voucher*" was prepared by Joan Ray, and was initialed by Chris
   DuToit on March 29, 2013.

3) This "*charge voucher*"  reflects that Ray and DuToit had **taken** $ 980.87
   from American Lenders Service Co. **federally  insured  /  federally
   protected** " ***Trust Account***" no. 102178265 to make a loan payment for
   M&M Repossession 7007 loan that <u>was **not**</u> due, **not** owing, was **not** in
   default, nor had **not** yet matured.

4) This voucher clearly and convincingly proves far beyond any preponderance of evidence, above any reasonable doubt that neither Dan or Cheri McCaul had never signed the Customer Signature line authorizing this transaction or any other of the thirty-four (34) transactions, in fact, this clearly proves that Chris DuToit and Joan Ray inserted and **(FORGED)** an authorized parties initial/signature to fraudulently authorize an illegal transaction and committed felony criminal acts in the process of, by attempting to create a false entry into the banks journal or general ledger violating a score of federal laws, they are:

18 U.S.C. (641) (644) (650) (1005) (1346) and;

Chapter 31 Embezzlement and Theft

*Fact is*:    Neither bank employee Chris DuToit nor Joan Ray are nor were ever authorized signers on American Lenders Accounts to make any transaction whatsoever.

87.) Plaintiffs allege and the (banks own records support) all

of plaintiff claims, here bate stamp (FMB000782) denoted the

wrongful/illegal transactions that were posted to the banks

general accounting ledger as a **"MISCELLANEOUS DEBIT"**

and **not** a legal "Set-Off"


After all, these are the banks own records, and bank records do not lie, do

they?


This March 29, 2013 wrongful /illegal transaction speaks for itself, that is,

DuToit and Ray had wrongfully and as Plaintiff alleges, illegally took

$ 980.87 from the 8265 account unauthorized.

Here are the *flow of funds* and reason in which McCaul alleges, bank fraud & theft and theft by embezzlement.

Flow of Funds

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| Balance Last Statement ............................ 03/28/13 | | | | $ 902.46 |
| FAIRMONT HOTSPRINGS | | $ 22.17 | 03/29/13 | $924.63 |

**POSITIVE**

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| **MISCELLANEOUS DEBIT (*Illegal theft*) $ 980.87** | | | **03/29/13** | **$(54.24)** |

*Negative*

| OVERDRAFT FEE | $ 66.00 | | 04/01/13 | |
|---|---|---|---|---|

FMB *caused* American Lenders to become negative in this account.

Each wrongful/illegal transaction by the Defendants *caused damages.*

Here is exactly how;

1. FMB *interfered* with financial and business obligations.

2. FMB *caused* M&M to become past due, with FMB, and its other creditors and clients, including First Montana Bank loans.

3. FMB *caused* American Lenders, M&M, McCaul loss of operating capital

4. FMB *caused* direct losses to twenty-seven (27) creditors, clients and contractor labor workers. (fact)

5. FMB *caused* the direct and indirect reduction of American Lenders Working Capital, and reduced American Lenders abilities to produce income, prevented growth opportunities and caused the reduction of staff/contractor labors, further losing revenue.

The calculation is simple 1st grade math:

1. During the course of 1047 days during DuToit reign as bank President, FMB, Inc. had wrongfully/illegally taken (**what is known**) the total sums of $ 58,412.17 from the Trust and Payroll Account of American Lenders that had illegally taken monies away (on average) $ 3,436.01 from American Lenders Co. its Clients –Creditors-Contractor Workers, who by which, were defrauded and further suffered financial damages caused by FMB, Inc. (Fact)

What Dan McCaul initially had thought was the first 1st wrongful/criminal acts on April 8, 2013, was actually, the third (3rd) predicate act perpetrated by the Defendants.

***BUT FOR:*** the Fraudulent Concealment of Records by the Bank the January 20, 20133 transaction was not discovered until February 22, 2016 **when** bank attorney Martin S. King finally provided McCaul some of American Lenders banking statements, to this day Plaintiff does not yet know the full extent of injury, because of banks fraudulent concealment of Plaintiff financial transaction records.

***BUT FOR:*** attorney Martin S. King mendacity the March 29, 2013 transaction would not be discovered or known until April 6, 2017 the day in which Mr. King sent this transaction voucher receipt to the state's banking commission after telling Dan McCaul that none of his transaction records "existed"

Once discovered, McCaul sent this email communication to Chris DuToit it reads as follows:

" *Chris –my account was debited in the amount of $ 2400.00 –those are clients funds- I am expecting another $ 5800.00 check to be deposited into that account - under no circumstances do not take fund out of the account, it will put me out of trust as I am now and will have to remit $ 4600.00 to my client on Friday"*

Each and every allegation set forth in this Complaint is incorporated in this Count by reference.

## SCHEME TO COVER UP

## FRAUDULENT and FALSE NOTICE OF DEFAULT LETTER

88.) Beginning on or about September 2, 2014 –FMB by and through its counsel Greg Black will send Dan McCaul, Cheri McCaul and M&M Repossession and Transport a series of three (3) *"Notice of Default"* letters to **cover-up and conceal** DuToit, Ness, Wallace, Fisher and Ray's wrong doing and potentially felony criminal acts that had been perpetrated for the prior 972 days.

89.) American Lenders was only a deposit creditor, and was never a loan borrower.   As a result of the fraudulent representations made by FMB, Inc. McCaul *alleges*:

    a.    DuToit and attorney Greg Black *knew* their scheme to harm McCaul and their threats and blackmail attempts had been uncovered by McCaul.

    b.    DuToit and Black had then devised a scheme to falsely and fraudulently send McCaul *"Notice of Default"* letters for the

loans being only **8 days past due**, **22 days past due** and **35 days past due**.

These cover-ups were done only by DuToit and bank Attorney Greg Black to conceal ***the prior*** wrongful /illegal financial transactions DuToit and other bank employees had already perpetrated.

This is a fact.

See (Ex P) - 1st Notice of Default August 19, 2014)

See (Ex P) - 2nd Notice of Default loan 7007 September 2, 2014)

See (Ex P) - 3rd Notice of Default loan 7007 September 8, 2014)

90.)These various acts forming a pattern of racketeering   extending from about January 31, 2013, to about August 21, 2014   are described in the two felony criminal complaints that McCaul  submitted to the Butte Silver Bow Law Enforcement Dept.(BSBPD)  and the Federal Bureau Of Investigations, (FBI) submitted as:

See (Exhibit I and J)

The specific acts were:

1. The continuous, separate and illegal taking of monies from Company (A) American Lenders "Trust" "Payroll" Accounts to pay Company (B) M&M Repossession (alleged) default monthly loan payments.

2. The repeated refusal to reimburse funds on demand that was taken wrongfully / illegally.

3. The repeated refusal to provide records and documents

4. The repeated refusal and inabilities to find "the loan files" 7007 and 7008.

5. The repeated failures of callbacks or response to email concerns M&M-American Lenders and McCaul has a banking customers/ debtors/ Creditors and Independent Contractors of the bank

6. The complete failure to address or resolve complaints

7. The repeated delays in every aspect of customer

compliant handling and filing proper SAR (suspicious
activity reports) as is mandated by the FDIC

8. Mendacity regarding financial records, debit /credit
/loan payment/ financial tickets and vouchers.

9. The complete ignoration of Plaintiff
communications regarding this mendacity.

10. The mendacity that were relied upon by BSB and FBI to
be true, accurate and correct i.e. records of Plaintiff
did not exist. *When in truth* they did, and they do.

11. Arrogance and abusiveness and bogus threats of
litigation and intimidating letters mailed and directed
towards Plaintiff.

12. Continuous insistence on the validity of Defendants
maintained, arbitrary and insubstantially based
denial of all records, contrary to fact, they do exist.

13. A reckless endangerment of Plaintiffs' health and
mental well-being, which has resulted in severe
damages, by this pattern of fraud and extortion, and
conspiracy to commit the fraud and extortion, among the
named Defendants.

14. A pattern of fraud and extortion causing Plaintiffs
justified fear and anxiety over losses that caused
Plaintiff to seek and continue to seek medical
treatment, as well as to force the Plaintiff into
Bankruptcy in concert and collusion with Mile High
Federal Credit Union to avoid a federal racketeering
claims, and further, the agony of this litigation,
which Plaintiff has to represent himself as PRO SE
and the fraudulent and extortionate manner and means
by which Defendants still avoid performance and
to this day, fails to admit any wrong doing.

15. These patterns of racketeering activity began
at approximately the same time that the plaintiff

suffered financial damages that were ascertained as a result of the 1st, the 2nd, **"Mothball"** and finally the "Closure" of Plaintiff 30 year old business.

16. These patterns of racketeering activity, theft, theft by embezzlement fraud, constructive fraud, bank fraud and, threats and intimidation conspiracy to commit fraud and extortion were committed using communications by mail and telephone.

17. These patterns of racketeering activity, fraud, Conspiracy to commit fraud and extortion were committed using communications by telephone and email communications.

91.) Attachments I and J were received by BSB Police officer Cole Conway, assigned case numbers 217CR0000385 on January 5, 2017 @ 4:42 PM.

92.) The investigator for (FBI) on these complaints is Special Agent Mr. Jonathon Trunagel.

93.) On May 15, 2017 Plaintiff faxed to FBI (9) pages that denoted

documentation in Support of Claims i.e. Mail Fraud / Wire Fraud

as well as other federal crimes, violations, and further

provided agent contact information for other potential bank

customers that appear to have been duped, defrauded and further

deceived by Defendants.

Plaintiff provides BATE STAMP FMB000077 March 29, 2013

*credit/charge voucher"* to FBI agent reflecting twofold:

> (1) Mendacity of Defendants Attorney King concealing
> records, documents by telling Plaintiff that none
> "exist" when in truth, they do.

> (2) Self-serving attempts by the bank to cover-up and
> conceal potential felony criminal acts perpetrated by
> the bank employees.

94.) Copies of *"PAID PROMISSORY NOTES"* were also sent to FBI

Agent – on May 15, 2017, among others.

The *"PAID"* stamped notes are contrary and in conflict

of what Defendants attorney Greg Black had sent to McCaul,

via **US MAIL** telling the IRS, telling the Federal Tax

Authorities of the U.S. Government via 1099-C "Cancellation of

Debt" that M&M Repossession and Dan and Cheri McCaul owed

First Montana Bank, and now, the IRS approximately

$211,670.70.   When in fact both debt balances were disputed.

95.) The emotional and financial conditions of Plaintiff loss of 30 year old

family owned business, coupled with attempts to maintain and also

sell the remaining business assets and the exhaustion from

writing countless complaints, made it clear that Plaintiffs

were in a situation incompatible with life.

Plans were made to salvage what could be salvaged and avoid

further financial loss due to Plaintiffs former creditors and

clients now suing Plaintiff in pursuit of the return of their monies

taken by bank employees fell short when McCaul had applied for

several loans but was turned down due permanent credit rating

damages cause by First Montana Bank repeated actions,

dishonoring checks and dishonoring electronic funds transfer

payment, breaching contractual obligation McCaul had with its

creditors and clients that otherwise would have assured them

and guarantee each creditor and client prompt and timely

monthly payments.


When multiple attempts to salvage business client and creditor

relationship *failed,* such made McCaul recuse to his private

home in the mountains as a desperate attempt to preserve what

was left of body, sanity and spirit and avoid the further

public humiliation and embarrassment First Montana Bank had

*caused* to both Dan and Cheri McCaul and their children.

# V. LEGAL POSITION AND SUMMARY OF SPECIFICS

96.) This case presents a distinction between a contractual
obligation, and how, and with what intent that obligation
is, or is not, performed.  A case of "simple" fraud, bad
faith, breach of contract, etc. is one thing; the underlying
pattern of racketeering that produces the surface appearance
of these simple symptoms is a different and separate matter,
and one which can fall under federal jurisdiction.

In this case, Plaintiffs claim this situation exists.

97.) Here, Plaintiff plead not only on the issue of performance,
but rather on the issue of the pattern of actions, motives
and intent of nonperformance, all of which extends into the
area of due process, and its denial.

98.) Plaintiffs allege, most generally, that underlying the
symptoms of this clear nonperformance is a motive and
pattern of extortion and racketeering activity, from which

Defendants do derive, and knew or should have known that

they did derive, great financial benefit, even if perpetrated

only on small transactions.

99.) It stands to reason that these violations of RICO in a pattern of

racketeering activity could not have been applied with such aplomb, and

systematic consistency to Plaintiffs, without inferring that Defendants

have these systems and patterns of racketeering activities internally

institutionalized in such a way that this is their **"pattern of doing**

**business".**

100.)        Indeed, there are other examples of these very same patterns

being used  or have been used with others of Defendants'

customers / clients who may also have legitimate claims.  They are;

        a) Ms. Stephanie Marshall

        b) Mr. Jacob Hart

        c) Ms. Jennifer Shahood

        d) Ms. Jennifer Parvenen

        e) Mr. Jeffrey Scaria

# VI. AS AND FOR CAUSES OF ACTION, PLAINTIFFS HEREIN COMPLAIN MORE SPECIFICALLY UPON U.S. CODE, COMMON LAW, AND THE CONSTITUTION OF THE UNITED STATES, OF DEFENDANTS

## 1. CONSPIRACY TO VIOLATE, AND VIOLATIONS OF

   a) 18 USC 1961-1968a (RICO)

as well as violations of

   b) 18 U.S.C. 650- Depositaries failing to safeguard deposits.

   c) 18 U.S.C. 1344 – Bank Fraud

   d) 18 U.S.C. Chapter 31- Embezzlement and Theft

   e) 18 U.S.C. 653 Disbursing Officer misusing public funds.

   f) 18 U.S.C. 651 Disbursing Officer falsely certifying full payment.

   g) 18 U.S. Code § 1005 - Bank entries, reports and transactions

h) 18 U.S. Code § 1344 – Applicability of  18 U.S.C.
1344  and (other violations)

## INJURY DISCOVERY RULE

Well known law *Agency Holding Corp. v. Malley-Duff & Associates , Inc. 483
U.S. 143 156 (1987)* established a four (4) year limitations period for civil RICO
claims.   Under this **"injury discovery"** rule, plaintiff allegations of fraud may not
yet be fully known or discovered to the plaintiffs and (others) until discovery takes
place.

Plaintiff motions under the "discovery rule" 11(b) (3) allow pleading based upon
evidence reasonably anticipated after further investigation or discovery.

## DATES INJURIES BECAME KNOWN

101.)       After  allot  of  difficulty,  intentional  delays,  and  fraudulent
concealment of which First Montana Bank and attorney King are aware,
Plaintiff was finally provided **copies of some of the bank** statements
however none of plaintiff's records are at issue here.   It was not known

and could not be discovered until February 22, 2016 the date in which plaintiff received (some) but, not all of his records to determine (some) but not all injures.  After diligent examination of these ***limited records*** such reveals the following discrepancies:

1.  Tortious Interference with Contract;

2.  Breach of Contract;

3.  Failure to properly credit payments made on M&M Loans;

4.  Improper assessment of late fees;

5.  Malicious, Intimidations, Threats, Bribery;

6.  Falsely declaring the loans in default;

7.  Failure to honor bank drafts and electronic payments,

8. Transferring funds among and between accounts without authorization or proper documentation, and without notification to the depositors;

9. Refusing to provide depositors with copies of their banking records and transaction receipts.

10. Demanding and receiving additional collateral for extending the "Operating Line of Credit" and then refusing to grant the operating line of credit.

**SECOND INJURY** was not discovered until April 6, 2017 when FMB bank attorney provided to states Banking Commission BATE STAMP (FMB000077) which showed the March 29, 2013 transaction, Plaintiff was not aware of this transaction until this date and could not have realized that he was injured because of the bank fraudulent concealments of plaintiff records.

Plaintiff seeks relief from the Court for:

continuing violation, and for proximate damages caused thereby,

as outlined below. In order to conform to FRCP Rule 8, and

not to burden the Court, the outline in this complaint contains

only statements, together with documentation, of the small number

of predicate acts that are required under RICO and Dobb Frank and

Sarbanes Oxley Act in order to void the anticipated motion to

dismiss on the basis of insubstantiality.

Supporting documents submitted now are only a demonstration to the

court that this complaint has genuine merit, is not an exercise in

legal sophistry, and more importantly that it is substantive in

law and in damages.

102.)      Plaintiffs allege that the "predicate acts" of 69) under

RICO, do establish a pattern of racketeering, and extortion, by Defendants

which constitute the "enterprise".

103.)      A "Pattern of Racketeering activity" is defined to be a pattern

that has both continuity and relationship. To the best of Plaintiffs

knowledge upon investigation <u>with limited documents</u> plaintiff was

provided, it appears that this pattern began on or about January 31, 2013 with Defendants' multiple and highly questionable (*illegal*) transactions against Plaintiff business accounts; it continued until the moment Plaintiff McCaul (a former banking consultant) screamed theft & bank fraud on or about December 10, 2015 and First *Montana Bank forgave* and *cancelled* the **$ 211,670.70** worth of loans M&M Repossession owed to the bank, to bribe, and keep McCaul silent from exposing the truth.

**BUT FOR**:    Plaintiff McCaul did not remain silent,

There is evidence and *certainly a threat that such activity will continue* into the future, **unless** this court revokes First Montana Banks-state banking charter and **then** removes the officers, directors and employees who participated in the schemes, and remained silent.

The activities of racketeering continue, and there is no evidence available to Plaintiffs that even suggests discontinuance of these activities.

Continuation of this pattern by Defendants is also a continuation of damages to Plaintiff and other unsuspecting bank customers.

a "pattern" of racketeering must include racketeering acts sufficiently unconnected in time and substance to warrant consideration as separate criminal episodes. The key to demonstrating a "pattern" is not merely the number of predicate acts, or the time span in which they occur, see Inryco, 615 F.Supp. at 833, but also whether they related to separate criminal episodes. (they were)

Medallion TV, 627 F.Supp. at 1297 (emphasis in original).

The statement overlooks the clear language of section 1961 stating that a pattern "requires at least two acts of racketeering activity." 18 U.S.C. Sec. 1961(5). RICO requires repeated acts, not repeated activity. Thus, if a defendant commits two or more predicate acts that are not isolated events, are separate in time, and are in furtherance of a single criminal scheme, **then** RICO's pattern requirement is satisfied.

104.)     Plaintiffs further allege that this pattern contains a sequence of events, **over years**, and within the last 10 years, that all have the same and common purpose, and that that purpose is one of egregiously deliberate, intentional, calculated and malicious, fraud and extortion which is a "pattern of racketeering activity".

105.)     The    particular    complaints    of    RICO    violations,    i.e., instances of predicate and explicitly prohibited acts, for each plaintiff, as documented assertions, are as follows:

106.)     Plaintiff Dan Patrick McCaul alleges patterns of,

1.  FRAUD:

Malicious, reckless and unwarranted denial of banking records, vouchers and receipt, in the face of the written declarations to:

Dan Patrick McCaul

Butte Silver Bow Law Enforcement

Federal Bureau of Investigation

And; for not retracting or correcting these false and

fraudulent statements that to date has prevented Plaintiff from

obtaining justice or legal counsel:

The delay in and fraudulent concealment of Plaintiffs own financial

transaction records are due to the persistent pattern of

Racketeering activities has produced permanent financial injuries, and

for which, Plaintiff continues to suffer financial injuries.

## 2. CONSPIRACY TO COMMIT FRAUD:

a) Bank attorneys Greg Black and Martin S. King named in
Exhibits  and _, believed by Plaintiffs to be part of an
conspiracy to protect their clients wrong doings, all acted
in agreement and concordance, both written and spoken in
the activities of sent via US Mail to McCaul on December
10, 2015 and later by Mr. King on in letter on February 22,
2016).

b) On information and belief, CEO Joe Kesler and VP- Adam McQuiston, DuToit supervisors to this group, never indicated any variance from or disapproval of these highly questionable activities.

c) It is highly unlikely, within any corporate structure that a person with Mr. Chris DuToit assumed authority could act independently and without guidance in corporate policy from yet higher authority.

d) It is highly unlikely, within any corporate structure, that a person with CEO Joe Kesler assumed authority could act independently and without guidance in corporate policy from yet higher authority of the Bank Board of Directors.

e) Further, it is highly unlikely, within any corporate structure, that First Montana Bank did not have any written corporate policy and procedure manual that

would clearly outline the banks "Right to Setoff" and
how such safeguards would prevent the same.

f)  Further refusal by First Montana Bank and its Board of
    Directors to address, correct or condemn the
    activities of 35 known acts) is once again, a token of consent
    and aid to these RICO activities.

## 3. EXTORTION:

The fear inducing continuation of the above malicious
denial which exists to this moment, continuing delays,
and abuse of process, are all causes for this Plaintiff
to remain in fear and suffers from anxiety and further
humiliation and financial hardship.

## 4. MAIL FRAUD:

The U.S. mail was used as an instrument of the initial
fraud, conspiracy to commit fraud, and in the continuation
of this fraud and fear inducing extortion.

5. WIRE FRAUD:

Both telephone and EMAIL were used in the continued

fraud, conspiracy to commit fraud, and in the continuation

of this fraud and fear inducing extortion.

107.)       Plaintiff Dan Patrick McCaul alleges patterns of,

6. ACTUAL FRAUD:

Malicious, reckless and unwarranted denial of all financial

transaction records by Defendants, on or about April 2, 2017,

the same time as Plaintiff McCaul, not only without

cause, but in contradiction to Defendants' BATE STAMP

FMB00077 sent to and received by the State's Banking

Commission revealing Martin S. King and FMB deceit and

untruthfulness.

Subsequent denial by Defendants to provide Plaintiffs their

necessary documents to retain counsel. The repeated delays

are due to the persistent pattern of racketeering activities

has produced irreversible, permanent, financial damages to

Plaintiff Credit Rating and once impeccable personal and business reputation.

### 7. CONSPIRACY TO COMMIT FRAUD:

This "connection" or "nexus" requirement entails a relationship between the enterprise and the racketeering activity. This does not require some benefit to accrue to the enterprise because of the racketeering activity. One of the principal purposes of RICO was to "deal with the infiltration of legitimate businesses by organized crime." United States v. Turkette, 452 U.S. 576, 593, 101 S.Ct. 2524, 2534, 69 L.Ed.2d 246 (1981). A fundamental premise of a program designed to curtail racketeering is that racketeering can harm rather than benefit legitimate businesses. See, e.g., 115 Cong.Rec. 827 (1969) (remarks of Sen. McClellan) ("Organized crime ... uses its ill-gotten gains ... to infiltrate and secure control of legitimate business and labor union activities."); 116 Cong.Rec. 35193 (1970) (remarks of Rep. Poff) ("[T]itle IX ... will deal not only with individuals, but also with the economic base through which those individuals constitute such a serious threat to the

economic well-being of the Nation.") Thus, to satisfy the nexus requirement, plaintiff must merely allege some relationship between the racketeering activity and bank.

## 8.  THEFT AND EMBEZZLEMENT

As stated by the Second Circuit in United States v. Scotto, 641 F.2d 47 (2d Cir.1980),  452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), a nexus exists "when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." Id. at 54. In the present case, the connection requirement is satisfied if DuToit was able to commit the fraud /theft by virtue of his position with or work for First Montana Bank or if the fraud was related to FMB's business.

The federal element of embezzlement as is defined 18 U.S.C.

Chapter 31, section    656 and as Plaintiff alleges FMB's Officers, and Employees were connected in capacity to the Federal

Reserve Bank by which,  FMB, Inc., by and through its Directors, Board of Directors by their position of trust or responsibility over those assets of Company (A) American Lenders Service Co. knowingly and purposely on thirty-five (35) separate and continuous occasions embezzled (what is known) $ 58,412.17 from the "Trust" and "Payroll" accounts of American Lenders to make the monthly loan payment of Company (B) M&M Repossession,  for which the employment of the perpetrators where that of the Corporation who directed employees to commit these predicate acts.

FMB, Inc. benefited from these illegal acts and received the benefits

 conferred from each illegal transaction as income to the banks journal and general ledger accounts.

Federal Embezzlement is a crime of trust in which any individual who has lawfully obtained access to any type of property or assets uses said access as a mean of stealing, misappropriating, or transferring ownership .

Embezzlement typically takes place when someone who is entrusted to provide expert services, such as a banker, uses his or her specialized skills in conjunction with unsupervised access to assets to enrich himself or herself.

Plaintiff allege that DuToit received financial compensation for his own personal financial gain by keeping delinquencies lower than 30 days, 60 days and 90 days past due.

Plaintiff alleges that DuToit received financial bonus compensation from his employer for production values on loans DuToit had incepted, and;

for taking illegal loan payments from other bank customers account- keeping delinquencies to a minimal.

Creating false and fraudulent loans and generating fee income derived from Non-Sufficient Funds transaction that FMB created in order to produce income revenue for First Montana Bank, Inc.

9. EXTORTION:

The fear inducing continuation of the above malicious

denial which exists to this moment, continuing delays,

and abuse of process, are all causes for this Plaintiff

to remain on medication, for an original and continuing

diagnosis of "severe anxiety".

FMB own President Ryan Nielsen warning and telling Dan

McCaul  to be cautious and fearful of FMB and other retaliating and

spying on McCaul and his family for the past two years has

caused McCaul to become reclusive and only go to places where

public places where there is allot of people and McCaul and

his family is known and feels comfortable.

10. MAIL FRAUD / WIRE FRAUD:

The mail fraud statute, 18 U.S.C. Sec. 1341, imposes criminal

liability upon anyone who devises "any scheme or artifice to defraud,

or for obtaining money or property by means of false or fraudulent

pretenses, representations or promises," and uses the United States

mails "for the purpose of executing such scheme or artifice or attempting so to do." To allege a violation of the mail fraud statute, plaintiff must show that (1) defendant devised a scheme or artifice to defraud, (2) defendant used the mails in furtherance of the scheme; and (3) defendant did so with the specific intent to deceive or defraud. Schreiber, 806 F.2d at 1399, 1400.

108.)    From this continuing, egregious and malicious pattern of racketeering and extortion by Defendants, in violation of RICO and Dobb-Frank-  Hobbs –Sarbanes Oxley Act, and also because  Defendants are:

1. in violation of contractual fiduciary duty,

2. as well as common laws prohibiting fraud, extortion and theft,

Plaintiffs allege further that as a proximate cause of Defendants' Pattern of

Racketeering activities, Plaintiffs have suffered, great, permanent and

irreparable, psychological, emotional, spiritual and financial harm and

damage, all of which left Plaintiffs destitute, unable to work or produce

income from December 30, 2015 through August 1, 2015 and unable to

live as independent and productive human beings.

109.)    Plaintiffs allege that the people, and governmental entities

of the United States which Plaintiffs have named, and on behalf

of whom Plaintiff also complain, have also been personally and

financially damaged, through their sense of justice, and in their attempt to

mitigate and contain, to the best of their ability, the damages of proximate

cause that have been maliciously and insistently inflicted by Defendants,

on Plaintiffs, over a period of approximately four (4) years.

## VII. REGARDING THE RACKETEERING "ENTERPRISE": FRCP 19(c)

110.)    While Plaintiffs understand that the whole of this enterprise

necessarily extends to the FDIC, IRS, FED RESERVE and Montana

Consumer Financial Protection Act, the Banking Commission, and even to

the Government of the State of Montana, Department of Revenue,

such may not be limited to these few agencies and may we extend

many other business and other agencies upon discovery.

VIII. RELIEF SOUGHT:

111.)     Any relief from continuing racketeering and extortion

activities:

the prohibited acts of RICO and Dobbs/Oxley Acts, under

intervention provided in 28 USC 1367, and any that the court can

give.

Plaintiffs understand that, ultimately from amendments III

and XI of the constitution and by U. S., Sup. Ct. precedent,

this court may not remove the Case, but Plaintiffs see

no reason why Federal intervention by way of court order is

not allowed and appropriate when the actions (the how, not the

what) of the Defendants' actions are in violation of US Code,

and when such U.S. Code automatically has Federal District

Court jurisdiction.

112.)    Compensatory Relief in the form of $ 37,840.500.00 for direct

and proximately caused damages to life, business, well-being and

finances of Plaintiff stemming from Defendants' actions,

as will be outlined and apportioned, which **credit rating** damages

will have such lifelong irreversible effect as restriction,

severe disadvantages and severe impairments, that permanently

prohibit Plaintiffs from being self-supporting, productive

individuals and credit worthy individual .


113.)    Such compensatory damages, plus interest, as may be verified

and claimed by the persons and entities upon whose behalf

Plaintiffs also complain, by virtue of existing contractual

agreements, in accordance with FRCP Rule 71;


114.)    Any and all debts, interest accrued by debt to the Internal

Revenue Service of the U. S., during the period of continuing

Pattern of racketeering activity, by virtue of Defendants'

Destruction of Plaintiffs' ability to pay the initial debt due

to Defendants intentionally dishonoring check(s), dishonoring

electronic funds transfer payments, breaching contractual

relationships between Plaintiff and United State

Government (IRS) and if applicable to the states own Dept. of

Revenue.

and *falsely* and *fraudulently* declaring loan 7007 and

7008 to be in default and by virtue of sending two (2) separate

1099 C- Cancellation of Debt forms to IRS via *US Mail*, when

"Promissory notes" 7007 7008 clearly show **"PAID"**

Defendants sent two (2) letters to Plaintiffs via *US MAIL* "Marking"

M&M Repossession and Transport LLC, loan(s) 7007 and 7008 as

*"Paid"*

Defendants forgave two (2) unrelated loans owed by Plaintiffs in the

sums totaling $ 211,670.70.

## THEN

Defendants after Plaintiff McCaul relied upon the Defendants word as

loans being truthful and in fact loans were "PAID IN FULL"

Defendants *mailed* to the US GOVERNMENT (IRS) two (2) separate **1099-C Cancellation of Debt** forms by which, Plaintiffs have a tax obligation owed to the IRS in the sum greater than $ 211,670.70 and in May of 2017, Cheri Lee McCaul income tax refund was seized by the IRS in the amount of $ 1,200.00.

115.)    Any damages, plus interest, that may be payable and due, to the Court itself, in compensation for whatever relief the Court itself may have accorded the Plaintiffs; this, since Plaintiffs' inability to defend themselves otherwise is a direct consequence of the Plaintiffs' destitution, which is caused by the unabated insistence on a clear pattern of racketeering activity engaged in within the "enterprise" that includes claimed "Tax Benefits" from the IRS and Dept. of Revenue.

116.)    All Plaintiffs' Costs in this litigation, and as well, just compensation for the destructive and onerous work, time expended and effort that has been forced, under duress and extortion, upon Plaintiffs by Defendants' actions;

Plaintiffs request special consideration from the court in a
determination of attorneys' fees, by the court, in recognition
of the work done, time expended, and cost of necessary
tools required to act as attorneys, Pro Se.

Plaintiff will seek *"full legal representations"* on federal these matters
and will ask the court that compensation be awarded to those attorneys in
support to assist plaintiff in defending his claims.

The attorney award section  is reciprocal for both plaintiff and defendants
as is provided within the promissory notes provision clauses.

117.)     Restitution of all loan payments paid to Defendants, which was
paid that Defendants have purported to the IRS as a "Bad Debt"
and "Charged-Off" when in truth Defendants own records tells
this court that FMB "Paid" loan 7007 and 7008 and should be
required to produce that transaction records from the banks
General Accounting Ledger proving that FMB had actually paid
these loans from the banks journal as is stated within Greg
Blacks December 10, 2015 letter to McCaul

[Given], that these [false] and [fraudulent misrepresentations],

which Plaintiff and (others) relied upon and believe where truthful and

honest that in fact Plaintiffs loans were **"PAID IN FULL"** only

to then receive <u>via</u> **US MAIL** on two (2) separate occasion telling

Plaintiff that loan 7007 and 7008 were not "Paid in Full" as

was represented.

 

a) Defendants received the benefits conferred in loan payments
   that Plaintiffs made from September 28, 2011 through
   December 20, 2014 in which Defendants "Charged Off" loan
   7008 without informing Plaintiffs loan had been charged off.

b) Then Defendants attempt to reap the Federal and State Income
   Tax Benefits by defrauding the Tax Authorities of the United
   States Government by claiming loan 7008 as a Bad Debt **_when_**
   **_in truth_**, FMB former president **caused** the loan to be a bad
   debt by being untruthful to his employer and the
   U.S.Government.

c) Defendant's self-serving attempts to extort and bribe Plaintiff to remain "Silent" by forgiving $ 211,670.70 to cover-up the unsavory misconducts of bank employees and the potentially unlawful crimes bank employees may have perpetrated, simply back fired.

d) Plaintiff was "stonewalled" by this deceptive scheme of the Defendants to deny Plaintiffs copies of his own banking records, transaction voucher receipts, loan files and payment debit/credit vouchers only to be told by bank attorney Greg Black that Plaintiffs request were *"moot"*

and since bank forgave the debts plaintiff owed, further denying plaintiff the "dispute of debt" provision in contract, whereby defendants are required to reconcile debt disputes by affording customers records granting opportunity to defend any dispute of debt or its amounts.

e) **Then** Defendants attorney Martin S. King sent via *US MAIL* a letter to Dan McCaul on February 22, 2016 it reads:

> "*Regarding your various demands for copies of negotiable instruments or vouchers, **there are no such documents that exist** as claimed by you*"

f) **When in truth**, they did exist, and they do exist, and Martin S. King *provided* one (1) single transaction voucher to the state of Montana Banking and Finance Commissioner, Wayne Johnston on *April 6, 2017*.

g) Plaintiffs allege that attorney King **obstructed justice** during the course of a state and federal investigation. Both state and federal investigators (FBI) relied upon Mr. King's letter sent to McCaul via US MAIL to be truthful, accurate, and honest. Instead, Mr. King's letter clearly and convincingly proves that Defendant and its agents i.e. Attorney Martin S. King participated in the "racketeering conspiracy" to further and

repeatedly deny Plaintiffs copies of plaintiffs own banking records by claiming that no records existed.

Defendants' statement to the contrary was an act of deliberate and calculated fraud, which fraud violates and abrogates any agreement that may, in any way, be construed as contractual from any "insurance or bonding policy" First Montana Bank may have with its applicable insurance carriers.

*Fact is*:   Dan McCaul requested that FMB submit his initial complaints to the bank insurance carrier for their own review, investigation and determination.  Plaintiff McCaul contends that FMB failed to do so or in the alternative FMB insurance carrier have already denied accepting liability for the malicious and willful acts perpetrated by the banks employees.

Plaintiffs entered this agreement with good faith, while Defendants entered it not only with "a priori" bad faith, but with "a priori" design of fraud and design of extortion: this just happens to be Defendants' "way of doing business" which Plaintiffs

understand as the very definition of a pattern of racketeering

activity that goes well beyond the mere "pattern" that is

understood, in multiple definitions by the various Courts of

the United States.]

118.)     And finally, any further damages of whatever kind that the

Court may deem suitable, just or appropriate, to Plaintiffs,

the Court, or any persons or entities upon whose behalf the

Plaintiffs also complain.

## IX. DEMAND FOR JUDGMENT AND TRIAL BY JURY

119.)     On the basis of all the foregoing, Plaintiffs demand judgment

for the stated relief, in trial by jury.

## X. PLAINTIFFS' AVERMENT REGARDING RULE 11, FRCP

120.)     Further extant evidence and argumentation, elucidating the

pattern of racketeering activity, and information which will

be acquired in the process of discovery, will establish the

necessary preponderance of evidence as is required by the

Court in accordance with the Federal Rules of Civil Procedure.

121.)      In particular, with regard to Rule 11 of FRCP, Plaintiffs aver that

all statements and allegations are true upon information, belief, and

reasonable investigation, and further that this action is not brought with

any purpose to harass or defame Defendants, and further that it is not of

any nature that could be called frivolous.

122.)      Plaintiffs have, in good faith, attempted to balance the

the necessary requirements of specificity and particularity,

under Rule 9(f) of FRCP to establish sufficiency of this

pleading, with the requirements of concision and directness

under Rule 8(e) of FRCP, all in accordance with Rule 11 of   FRCP.

## SUMMARY OF DAMAGES

Summary of Reasonable Counsel's Fees:    TBA

Summary of Consequential Damages:    TBA

Summary of Credit Rating Damages:    TBA

Summary of Actual Damages (partial list):

unpaid professional invoices:    $ 8,350.00

(upon discovery there maybe more)

triple damage multiplier (3x):    $ 25,050.00

Breach of contract Water Bug, actual:    $ 16,000.00

Fisher invoice

Triple damage multiplier (3x):    $ 48,000.00

Amounts (known) taken from 8265 Account:        $   58,412.17

(Upon discovery there maybe more)


Triple damage multiplier (3x):                              $     175,236.51


Loss of business and net worth, actual                 $ 2,370.000.00


Loss of Business Opportunity            TBA


Triple damage multiplier (3x):                           $ 7,110.000.00

--------------


Subtotal:                                                 $   7,840.500.00

Summary of Punitive Damages:                 <u>$ 14,196.079.33</u>

MCA 27-1-220 (3) an award for punitive

Damages may not exceed $ 10 million or

3 % of a defendants net worth.

Summary of Punitive Damages (3x):      $ 42,588,237.99

Damage impact chart


**TOTAL DAMAGES** (minimum):    <u>$ 7,840.500.00</u>


The damage matrix is three-dimensional:  for each Defendant, there are actual, consequential, and punitive damages (3 columns) on each of three counts (3 rows).

At present there are (6) Defendants in total, Plaintiff will ask the court for guidance on calculation for each Defendants liability.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable to a jury lawfully convened.

## LIST OF EXHIBITS

Pursuant to 18 U.S.C. 1961(9), Plaintiff now formally incorporates His *documentary material* by reference to all of the following Exhibits, as if set forth fully here, to wit:

Exhibit "A" with Cover Sheets

Exhibit "B" with Cover Sheets

Exhibit "C" with Cover Sheets

Exhibit "D" with Cover Sheets

Exhibit "E" with Cover Sheets

Exhibit "F" with Cover Sheets

Exhibit "G" with Cover Sheets

Exhibit "H" with Cover Sheets

Exhibit "I" with Cover Sheets

Exhibit "I" with Cover Sheets

Exhibit "J" with Cover Sheets

Exhibit "L" with Cover Sheets

Exhibit "M" with Cover Sheets

Exhibit "N" with Cover Sheets

Exhibit "O" with Cover Sheets

Exhibit "P" with Cover Sheets

Exhibit "Q" with Cover Sheets

Exhibit "R" with Cover Sheets

Plaintiff will provide additional Exhibits "1 through 122" relevant to plaintiff claims as such becomes necessary with Cover Sheets.

## VERIFICATION

I, Dan Patrick McCaul, *Sui Juris*, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of My current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

---

Dan Patrick McCaul
97 Lime Kiln Road
Butte, Montana 59701
(406) 490-8677

Residing in Butte Montana

County of Silver Bow

I attest the signature of Dan Patrick McCaul on this $\underline{29}^{\text{th}}$ (day of

_____2017.

Dan Patrick McCaul

Notary Public

DATE: June 29, 2017 DATE: 6/29/17

JENICA HELD
NOTARY PUBLIC for the
State of Montana
Residing at Butte, Montana
My Commission Expires
March 04, 2020

*Initial COMPLAINT for Civil RICO Remedies: Page 145 of 155*